UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DEREK WASKUL, ET AL., | |
| Plaintiffs, | Case No. 16-10936 |
| v. | SENIOR U. S. DISTRICT JUDGE ARTHUR J. TARNOW |
| WASHTENAW COUNTY COMMUNITY MENTAL HEALTH, ET AL., | U.S. MAGISTRATE JUDGE ELIZABETH A. STAFFORD |
| Defendants. | |

_____/

**ORDER DENYING DEFENDANTS' JOINT MOTION FOR ABSTENTION [186]**

Plaintiffs, severely developmentally disabled individuals living in Washtenaw County, receive Community Living Supports ("CLS") services through Medicaid's Habilitation Supports Waiver ("HSW"). These services are individually planned and budgeted for based on the participant's medical needs. This Medicaid program affords Plaintiffs the opportunity to live independently in the community as an alternative to institutionalization. The Amended Complaint [146] challenges the current budgeting method Defendants use to implement the CLS program as insufficient to account for all of Plaintiffs' medically necessary services.

Before the Court is a Motion for Abstention [186] filed jointly on February 8, 2021 by Defendants Michigan Department of Health and Human Services and Nick

Lyon ("State Defendants"), Washtenaw County Community Mental Health ("County Defendant"), and Community Mental Health Partnership of Southeast Michigan and Jane Terwilliger ("Regional Defendants"). Plaintiff filed a Response [188] on February 22, 2021. Defendants filed a Reply [190] on March 1, 2021. Pursuant to Local Rule 7.1(f)(2), the Court finds that the Motion [186] can be determined without holding a hearing. E.D. MICH. LR 7.1. For the reasons explained below, the Court **DENIES** Defendants' Motion for Abstention [186].

## FACTUAL BACKGROUND

Plaintiffs Derek Waskul, Cory Schneider, Kevin Weisner, and Hannah Ernst suffer from various developmental disabilities. Plaintiff Washtenaw Association for Community Advocacy ("WACA") is a non-profit organization that advocates for persons with developmental disabilities. The individually named Plaintiffs participate in CLS, a Medicaid program predicated upon the right to self-determination to structure personal plans of service according to individual medical need. Michigan's CLS program offers Plaintiffs the opportunity to obtain in-home and community services as an alternative to institutionalization.

On March 15, 2016, Plaintiffs commenced this action challenging the budgeting method used to implement the program. The original impetus for this litigation was a reduction in the CLS rate calculation, which took effect on May 15,

2015. Initially, Plaintiffs sought reinstatement of the pre-May 2015 rate.[1] Since the commencement of this action, however, the CLS rate has been raised several times and currently exceeds the pre-May 2015 rate. Despite the fact that all named Plaintiffs are receiving CLS rates higher than those assigned before May 2015, Plaintiffs challenge the existing budget procedure as inadequate.

In Michigan, a CLS participant's budget is calculated through a Person-Centered Planning Process ("PCP Process"). Once the participant notifies a supports coordinator of his or her interest in self-determination, an Individual Plan of Service ("IPOS") is developed based on the medical needs of the participant. The IPOS

---

[1] The Sixth Circuit has briefly summarized the CLS budget adjustments which precipitated this litigation: "Prior to 2012, individuals receiving services under the Program in Washtenaw County received a service budget based on a single, all-inclusive rate that was intended to cover both the personnel and the program delivery costs. In 2012, the predecessor agency to Washtenaw County Community Mental Health, Washtenaw Community Health Organization, changed the budget calculation method to allow for billing of the personnel costs and the associated costs as separate line items.

Amid budgeting struggles in 2015, WCCMH moved to revert to a single, all-inclusive budget method that allocated $13.88 to cover both personnel and the delivery costs of the Program. The reversion was to occur on May 15, 2015. The budgeting change did not reduce the total number of service hours recipients were authorized to receive. The effect of utilizing an all-inclusive rate, however, was to reduce the total budget amount for each recipient. As a practical matter, service recipients had to reduce the hourly rate they paid service providers to maintain the level of hours authorized prior to the budget change. The notice to recipients acknowledged this reality, stating that '[w]hile this is not a reduction in your current level of services, it may reduce the amount you can pay your staff.'" *Waskul, et al. v. Washtenaw Cnty. Cmty., et al.*, No. 16-2742 (6th Cir. Aug. 14, 2018).

includes the HSW services needed by and appropriate for the participant. It is prepared after a meeting with all relevant parties including the participant's guardians and supports coordinator.

At issue here is the budgeting method employed to implement the IPOS. That method provides:

> An individual budget includes the expected or estimated costs of a concrete approach of obtaining the mental health services and supports included in the IPOS. Both the [IPOS] and the individual budget are developed in conjunction with one another through the [PCP]. Both the participant and the PIHP [Prepaid Inpatient Health Plan] must agree to the amounts in the individual budget before it is authorized for use by the participant. This agreement is based not only on the amount, scope and duration of the services and supports in the IPOS, but also on the type of arrangements that the participant is using to obtain the services and supports . . . . determined primarily through the PCP process.
>
> Michigan uses a retrospective zero-based method for developing an individual budget. The amount of the individual budget is determined by costing out the services and supports in the IPOS, after a IPOS that meets the participant's needs and goals has been developed . . . .
>
> Once the IPOS is developed, the amount of funding needed to obtain the identified services and supports is determined collectively by the participant, the mental health agency (PIHP or designee), and others participating in the PCP process.

Am. Compl. Ex. 2, Appendix E-2, ¶ b(ii).

The PIHP[2] sets an hourly rate for the providers and services included in the IPOS. The existing rate for all named Plaintiffs is at least $15.56/hour. That hourly

---

[2] A PIHP is a Medicaid managed care organization responsible for making medical assistance available and accessible to Medicaid beneficiaries within their region.

rate is then multiplied by the number of hours in the IPOS to create an all-inclusive budget. With this all-inclusive budget, the participant has a significant degree of flexibility in implementing his or her IPOS.

## PROCEDURAL HISTORY

Plaintiffs Derek Waskul, Cory Schneider, Kevin Wiesner, and WACA commenced this action on March 15, 2016. On March 30, 2016, Plaintiffs filed a Motion for Preliminary Injunction [8]. The Court held a two-day evidentiary hearing on the Motion [8] which began on August 1, 2016 and continued on September 20, 2016. On November 22, 2016, the Court issued an Order [55] denying Plaintiffs' Motion for Preliminary Injunction. The Court held that Plaintiffs were unlikely to succeed on the merits of their claims that WACA had associational standing and that Defendants had violated the Social Security Act and Mental Health Code. On December 15, 2016, Plaintiffs filed a Notice of Appeal [57] on the issue of whether WACA had associational standing.

While awaiting the Sixth Circuit's ruling on the standing issue, Plaintiffs filed a second ("*Waskul II*") on July 20, 2017. Plaintiffs also filed a Motion for Leave to File an Amended Complaint [69] on August 9, 2017. The complaint in *Waskul II* and the Proposed Amended Complaint were virtually identical.

---

Defendant Community Mental Health Partnership of Southeast Michigan is the PIHP that covers Washtenaw County.

On August 14, 2018, albeit on narrow grounds, the Sixth Circuit affirmed this Court's ruling denying injunctive relief. The Sixth Circuit explained that because the named Plaintiffs' due process claims for injunctive relief were moot, WACA lacked associational standing to sue for injunctive relief on their behalf. *Waskul*, No. 16-2742.

On October 1, 2018, Defendants filed motions to dismiss [129, 130, 131] the complaint in *Waskul II*. The motions were fully briefed. On February 6, 2019, the Court held a hearing on the motions. At the hearing, the Court granted Plaintiffs' Motion for Leave to file an Amended Complaint [69] and granted Defendants' motions for dismissal of the complaint in *Waskul II* as duplicative.

On February 11, 2019, Plaintiffs filed an Amended Complaint [146] alleging: Failure to Provide Constitutionally Adequate Notice in violation of the Due Process Clause (Count I); Violation of Statutory Right to Notice (Count II);[3] Failure to Authorize Services in the Amount, Scope, or Duration to Reasonably Achieve their Purpose in violation of the Social Security Act (Count III); Failure to Furnish Medical Assistance with Reasonable Promptness in violation of the Social Security Act (Count IV); Violation of Title II of the Americans with Disabilities Act (Count V); Violation of Section 504 of the Rehabilitation Act (Count VI); Failure to Take

---

[3] Plaintiffs have voluntarily dismissed Counts I and II.

Necessary Safeguards in violation of the Medicaid Act (Count VII); Failure to Provide a Meaningful Choice Between Institutionalization and Community Based Services in violation of the Medicaid Act (Count VIII); Third Party Beneficiary Claim for Violation of Assurances (Count IX); Abuse and Neglect in violation of the Michigan Mental Health Code (Count X).

Defendants filed several Motions to Dismiss [129] [130] [131] the case for mootness and failing to state a claim under Fed. R. Civ. P. 12(b)(6). After a hearing, the Court granted those motions and closed the case on March 20, 2019. (ECF No. 164). Upon Plaintiff's appeal, the Sixth Circuit reversed this Court's Order [164] and remanded the case for further proceedings. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426 (6th Cir. 2020). Defendants now ask the Court to abstain from deciding Plaintiffs' claims under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), *Rooker v. Fidelity Trust, Company*, 263 U.S. 413 (1923), *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

## ANALYSIS

Defendants seek abstention due to Plaintiff Kevin Wiesner's pending case in state court. In 2019, Weisner filed an internal appeal with County Defendant, Washtenaw County Community Mental Health ("CMH"), seeking an increase in his CLS rate to $18/hour. (ECF No. 188-3). His request was denied on July 16, 2019.

(*Id.*). On November 5, 2019, Weisner requested a state fair hearing to appeal CMH's decision, because his budget did not satisfy the requirements of the Michigan's HSW. (*Id.*). On January 6, 2020, following a hearing, an Administrative Law Judge reversed CMH's denial and ordered it to reassess the petition and authorize a sufficient budget rate to meet the goals of Weisner's IPOS. (ECF No. 188-4, PageID.4970).

CMH appealed the ALJ decision to Washtenaw County Circuit Court. There, the court vacated the ALJ decision and ruled that the ALJ had acted "beyond the scope of authority" by determining and changing the CLS budget rate. (ECF No. 186-2, PageID.4788-90). Weisner has since sought leave to file an appeal to the Michigan Court of Appeals. (ECF No. 186-3). In his motion, he argues that the Circuit Court lacked jurisdiction over CMH's appeal, the ALJ did not exceed his authority in ordering CMH to reassess the budget, and that the Circuit Court improperly found that there are available and suitable agency providers as alternatives to self-determination. (*Id.*).

Whether the Michigan Court of Appeals ultimately reverses the Circuit Court and approves a budget rate increase for Weisner or affirms the Circuit Court's vacation order and Weisner's rate stays the same—neither decision has any bearing on the legal questions before this Court: whether the budget calculation system

violates various federal and state law requirements by diminishing Plaintiffs, not just Weisner's, access to community living services.

Other courts in this case's procedural history agree with this interpretation of the state court proceedings. The Circuit Court stated that "[t]he decision by the Administrative Law Judge really went to the sufficiency of a budget." (ECF No. 186-2, PageID.4788). While the Sixth Circuit stated on appeal that although the ALJ ruled in Weisner's favor to increase his budget, "the budget methodology was not changed." *Waskul*, 979 F.3d at 438-39. However, the Michigan Court of Appeals is not considering whether or how to change the budget methodology, instead it is primarily considering whether the Circuit Court and ALJ had proper jurisdiction and authority for their decisions. For these reasons, the divergency between this case and Weisner's state case preclude all of Defendants' purported reasons for abstention.

### I.  *Burford* Abstention

First, Defendants seek abstention under *Burford v. Sun Oil Co.*, which directs abstention in light of a state's interest in being provided the first opportunity to interpret its own statutes. 319 U.S. 315 (1943). In the *Burford* case, the United States Supreme Court found that there existed, "an overriding state concern and superior competence to deal with a complex state regulatory scheme for controlling the drilling of oil wells." *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir. 1980).

Under the doctrine, "[w]here timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*") (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

Here, the Court finds that no such timely and adequate state review exists of the CLS budget methodology to warrant abstention under *Burford*. While this case touches on state policy, it makes no attempt to shape it or "jigger with [its] inner workings," it merely questions whether the budget system violates federal and state law. *Zynda v. Arwood*, 175 F. Supp. 3d 791, 802 (E.D. Mich. 2016) (rejecting defendants' Burford abstention argument).

Regardless, "there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail*, 434 U.S. 374, 379 n. 5 (1978). Furthermore, "[w]hile *Burford* is concerned with protecting complex state administrative processes from

undue federal interference, it does not require abstention whenever there exists such a process, or even when there is a 'potential for conflict' with state regulatory law or policy." *NOPSI*, 491 U.S. at 362 (quoting *Colo. River Water Conservation Dist.*, 424 U.S. at 815-816).

In addition, Weisner's state court case pertains to state courts' jurisdiction over administrative decisions. If state courts themselves are not convinced of their own jurisdiction to entertain Weisner's claim for an increased budget, then there exists no adequate review of Plaintiffs' budget concerns in this case. *Burford* abstention is therefore inappropriate.

## II. *Rooker-Feldman* Abstention

The *Rooker-Feldman* doctrine, as articulated in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and then, 60 years later, in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983) bars federal district courts from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments . . . and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Put simply, "[i]f the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). No such source of

injury exists here. Plaintiffs' case in this court was filed years before Weisner's state court proceedings began and it seeks relief that no state court has previously denied.

Further, although Plaintiff challenges the sufficiency of his CLS budget in both actions—they are not "inextricably intertwined" for purposes of abstention. *Feldman*, 460 U.S. 462 at 486 (finding that federal courts may not decide claims that are "inextricably intertwined" with state court denials). In state court, Weisner sought an increase in his budget *rate*. Here, he seeks a finding that the budget *calculation method* is unlawful and insufficient to meet his needs. As the Sixth Circuit has already noted, an increase in Weisner's rate does not change the methodology used to calculate the rate for all Plaintiffs. These claims are admittedly related—but one does determine the other. Therefore, the *Rooker-Feldman* abstention doctrine is inapplicable here.

### III. *Colorado River* Abstention

Finally, Defendants seek abstention under the *Colorado River* doctrine. Under this doctrine, "despite the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them, considerations of judicial economy and federal-state comity may justify abstention in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 751 (E.D. Mich. 2014) (quoting *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998)). "When a district court decides to dismiss

or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Id.* at 751-52 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Co.,* 460 U.S. 1, 28 (1983)).

The United States Supreme Court has recognized that, "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1975).

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

*Id.* (citing *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-189 (1959)). Since the highest court has deemed abstention to be an exception to be applied in narrow circumstances, the presumption is that the District Courts will exercise their jurisdiction to hear cases properly brought before them. This presumption must be followed here. This Court does not find that exceptional circumstances, complex issues, or evidence of greater expertise in the Michigan Courts exist to warrant abstention in this case. In addition, for the reasons previously stated, Weisner's state court proceedings are not parallel to this case, because they

are not substantially similar. *Total Renal Care, Inc. v. Childers Oil Co.*, 743 F. Supp. 2d 609, 613-14 (E.D. Ky. 2010) ("Suits are parallel if substantially the same parties litigate substantially the same issues.") (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.,* 946 F.2d 1072, 1073 (4th Cir.1991)). Application of the *Colorado River* abstention doctrine here is therefore unwarranted.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion for Abstention [186] is **DENIED**.

**SO ORDERED**.

|  |  |
|---|---|
| Dated: August 9, 2021 | s/Arthur J. Tarnow<br>Arthur J. Tarnow<br>Senior United States District Judge |