# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| DEREK WASKUL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WASHTENAW COUNTY COMMUNITY MENTAL HEALTH, *et al.*, <br><br> Defendants. | No. 2:16-cv-10936-AJT-EAS <br> Hon. Arthur J. Tarnow <br> Hon. Elizabeth A. Stafford |

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY (2ND RFP) BY DEFENDANT WCCMH AND BRIEF IN SUPPORT

Nicholas A. Gable (P79069)
LEGAL SERVICES OF SOUTH
CENTRAL MICHIGAN
Attorney for Plaintiffs
15 S. Washington Street
Ypsilanti, MI 48197
(734) 665-6181 ext. 127
ngable@lsscm.org

Edward P. Krugman
Jordan Berger
(Both New York Bar;
Admitted in E.D. Mich.)
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
Attorney for Plaintiffs
275 Seventh Avenue, Suite 1506
New York, NY 10001
(212) 633-6967
krugman@nclej.org

Kyle Williams (P77227)
Simon Zagata (P83162)
DISABILITY RIGHTS MICHIGAN
Attorney for Plaintiffs
4095 Legacy Pkwy Ste. 500
Lansing, MI 48911-4264
(517) 487-1755
kwilliams@drmich.org

Lisa Ruby (P46322)
MICHIGAN POVERTY LAW PROGRAM
Attorney for Plaintiffs
15 S. Washington Street
Ypsilanti, MI 48197
(734) 998-6100 ext. 117
lruby@mplp.org

September 22, 2021

# MOTION

1. On June 21, 2021, Defendant WCCMH sent a letter to Community Living Support ("CLS") services recipients in Washtenaw County, including the Plaintiffs in this action, notifying them that that WCCMH's direct care providers are "experiencing severe labor shortages," and that its providers consequently cannot meet beneficiaries' needs. Ex. 1, June 21, 2021 Letter. The letter specifically asserted, as the Plaintiffs allege in this action, that the current hourly CLS rate is "not enough to attract/retain staff," and noted that some recipients formerly receiving 24/7 CLS in their own homes had been forced to move into group homes or rely on involuntary natural supports.

2. At least one of the other three Community Mental Health Service Providers ("CMHSP") within Defendant CMHPSM's region sent a nearly identical letter to its services recipients around the same time. Ex. 2, Livingston Letter.

3. On July 30, 2021, Plaintiffs served a Rule 34 Request for Production on Defendant WCCMH's counsel. Ex. 3, 2nd RFP to WCCMH. Twelve of the thirteen requests sought information related only to the June 21 WCCMH letter, while the thirteenth sought information concerning substantially similar letters, such as the Livingston letter attached hereto as Ex. 2.

4. The requests were narrowly tailored, seeking specific information about individual recipients or providers expressly identified in the letter (##5-9);

documentation relating to specific contentions in the letter (##3-4, 11); information relating to what the letter described as "severe labor shortages" for direct care providers (#2); and communications with the other Defendants and with other CMHSPs about the two letters (##1, 12-13).

5. The discovery sought is central to the claims and defenses in this litigation because it directly concerns the current CLS staffing environment in Washtenaw County. In the letter, WCCMH asserts, exactly as Plaintiffs allege in this action, that the current all-inclusive hourly rate is indeed "not enough" for providers to staff beneficiaries' service hours. The letter addresses the very recent forced removal of CLS recipients from community settings into more restrictive settings, and it notes the forced reliance on natural supports - both scenarios that the Sixth Circuit expressly held relate to one or more of the claims and defenses in this case. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 452, 460-64 (6th Cir. 2020). The letter further suggests that agency providers are not in fact available as an alternative to self-determination, one of Defendant WCCMH's primary defenses in this case. *Id*. at 451.

6. The day after Plaintiffs' Second RFP came due, Plaintiffs' counsel asked WCCMH's counsel for an update on production. In response, counsel for

    WCCMH claimed that she was "working on them" and hoped to have them done soon. Ex. 4, Aug. 31 emails.

7. Plaintiffs' counsel followed up again two weeks later, on September 14, and received WCCMH's Response later that day. Ex. 5, Response.

8. In its Response, WCCMH refused to produce any documents (or identify potentially responsive documents), instead relying on a string of entirely boilerplate objections that were copied and pasted verbatim in response to each request. *Id*.

9. In addition to being legally meaningless boilerplate objections that this Court considers tantamount to filing "no objection at all," *Sobel v. Imprimis Pharmaceuticals*, 2017 WL 5035837, at *4 (E.D.Mich. Oct. 26, 2017), both the generalized nature of the objections and WCCMH's repeated reliance on HIPAA objections were expressly precluded by this Court at the September 1, 2021 motions hearing.

10. The following day, Plaintiffs' counsel sent a letter asking WCCMH to reconsider and withdraw its objections, or to provide dates within the next week for a meet/confer. Ex. 6, 9/15/21 Letter. In the letter, Plaintiffs' counsel advised that Plaintiffs would seek attorney fees if forced to file a motion to compel.

11. Plaintiffs did not receive a response to that letter and did not receive concurrence in this motion.

12. Accordingly, Plaintiffs respectfully request that this Court enter an order:

   a. Compelling production of the discovery sought in Plaintiffs' Second Request for Production to Defendant WCCMH;

   b. Ordering that any subsequent objections to Plaintiffs' Second Request for Production of Documents be deemed waived in accordance with Fed.R.Civ.P. 33(b)(4), 34(b)(2)(A), *e.g. Caldwell v. 9173-7999 Quebec*, Inc., 2020 WL 428356 (E.D. Mich. Jan. 28, 2020); and

   c. Ordering sanctions and attorney fees pursuant to Fed.R.Civ.P 37(a)(5)(A).

# BRIEF

## TABLE OF CONTENTS

Factual Background ........................................................................................3

I.     The Discovery Sought is Central to This Litigation.....................    5

II.    WCCMH's Repeated Boilerplate Objections are Legally Meaningless and Precluded by This Court's Ruling at the September 1, 2021 Motions Hearing............................................    8

       A.     Breadth, Proportionality, and Vagueness...........................    8

       B.     HIPAA ................................................................................    9

III.   Plaintiffs are Entitled to Attorney Fees. .......................................    9

## INDEX OF AUTHORITIES

**Cases**

*Sobel v. Imprimis Pharmaceuticals*, 2017 WL 5035837 (E.D.Mich. Oct. 26, 2017) .................................................................................................9

*Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426 (6th Cir. 2020). .........................................................................................................6

**Rules**

Fed.R.Civ.P. 34(b)(2)(C) ..................................................................................8
Fed.R.Civ.P. 37(a)(5)(A) ..................................................................................9

*Issues Presented*

1. Whether WCCMH has complied with its obligation to meet and confer regarding the discovery issues in this motion?

2. Whether WCCMH should be compelled to produce highly relevant discovery, when its reliance on purely boilerplate objections has already been rejected by this Court?

3. Whether WCCMH should be permitted to continue making HIPAA objections, given that a HIPAA-qualified protective order has already been entered in this case and this Court has already rejected those objections?

4. Whether Plaintiffs are entitled to attorney fees?

*Controlling or Most Relevant Authority*

*Waskul v. WCCMH*, 979 F.3d 426 (6th Cir. 2020)

*Sobel v. Imprimis Pharmaceuticals*, 2017 WL 5035837 (E.D.Mich. Oct. 26, 2017)

Fed.R.Civ.P. 34(b)(2)(C)

Fed.R.Civ.P. 37(a)(5)(A)

Plaintiffs respectfully submit this brief in support of their motion to compel discovery against Defendant Washtenaw County Community Mental Health ("WCCMH"). The exhibits in the exhibit volume filed herewith are cited "Ex. xx, [brief description].

Simultaneously with the filing of this motion to compel, Plaintiffs are moving for an order referring the motion to Judge Stafford and placing it on a schedule (including a joint issues list due on October 4) that will permit it to be heard on October 13 together with the continuation of the hearing on Plaintiffs' Motion to Compel Discovery by Defendant WCCMH and Non-Parties Washtenaw County and Health Management Associates (ECF# 201).

### FACTUAL BACKGROUND

On June 21, 2021, Defendant WCCMH sent a letter to Community Living Support ("CLS") services recipients in Washtenaw County, including the Plaintiffs in this action, notifying them that WCCMH's direct care providers are "experiencing severe labor shortages," and that its providers consequently cannot meet beneficiaries' needs. Ex. 1, June 21, 2021 Letter. The letter specifically asserted, as the Plaintiffs allege in this action, that the current hourly CLS rate is "not enough to attract/retain staff," and noted that some recipients formerly receiving 24/7 CLS in their own homes had been forced to move into group homes or rely on involuntary natural supports. At least one of the other three Community Mental Health Service Providers

within Defendant CMHPSM's region sent a nearly identical letter to its services recipients around the same time (Ex. 2, Livingston Letter).

On July 30, 2021, Plaintiffs served a Rule 34 Request for Production on Defendant WCCMH's counsel. Ex. 3, 2nd RFP to WCCMH. Twelve of the thirteen requests sought information related only to the June 21 WCCMH letter, while the thirteenth sought information concerning substantially similar letters, such as the Livingston letter attached hereto as Ex. 2. The requests were narrowly tailored, seeking specific information about individual recipients or providers expressly identified in the letter (##5-9); documentation relating to specific contentions in the letter (##3-4, 11); information relating to what the letter described as "severe labor shortages" for direct care providers (#2); and communications with the other Defendants and regional CMHSPs about the two letters (##1, 12-13).

In its Response (delivered two weeks late), WCCMH refused to produce any documents or identify potentially responsive documents, and instead relied on a string of entirely boilerplate objections that were copied and pasted verbatim in response to each request:

> Defendant WCCMH OBJECTS to this Request for Production because it is irrelevant, vague, overly broad and not proportional to the needs of this case. Plaintiffs' Complaint states, in its Preliminary Statement, that this is "an action to restore services and supports Defendants are obligated to provide to the individual Plaintiffs and those similarly situated to enable them to avoid institutionalization." This Discovery Request is not relevant to the resolution of the issues in this case as it bears no relationship to the issue of whether Plaintiffs are entitled to receive the relief they seek in this case. In addition,

-4-

the information sought is privileged in that it would call for Medicaid recipient information that is protected by HIPPA.

The document attached as Exhibit 1 refers to a crisis situation brought about by the COVID pandemic. The factors which went into the creation of the staffing issues brought about by the pandemic are not related to Plaintiffs' claims regarding the budget methodology to which they claim entitlement. Therefore the Exhibit is not only irrelevant to the issues in this case, but also would only serve to confuse the issues. Ex. 5, Response.

WCCMH also included two general objections at the beginning of its response, incorporating by reference "the objections of Defendants State and CMHPSM, and noted by the Magistrate Judge, with regard to the Plaintiffs Definitions and Instructions as to their vagueness and over breadth." Ex. 5.

A letter from Plaintiffs' counsel asking WCCMH to reconsider and withdraw its objections or to provide dates within the next week for a meet/confer (Ex. 6, 9/15/21 Letter) was ignored, thereby necessitating this motion.

## ARGUMENT

**I.     The Discovery Sought is Central to This Litigation.**

The subject of WCCMH's June 21, 2021 letter and documentation concerning that letter is not just "relevant"; it is central to this litigation. Plaintiffs' core allegation is that the Defendants' budgeting methodology/rate does not permit them to receive the medically necessary CLS services mandated by their IPOS, in part because the all-inclusive CLS rate does not permit them to pay enough to find and retain self-determination providers (*See, e.g.*, Cmplt. ¶¶ 416-417). This letter asserts,

-5-

exactly as Plaintiffs contend, that the current all-inclusive hourly rate is indeed "not enough" for providers to staff beneficiaries' service hours, and it acknowledges that beneficiaries have been forced to enter more restricted settings or rely on involuntary natural supports as a result - both scenarios that the Sixth Circuit expressly held relate to one or more of the claims and defenses in this case. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 452, 460-64 (6th Cir. 2020).

Furthermore, also as the Sixth Circuit held, the availability or lack thereof of agency providers is a central issue in this case, and one that WCCMH has repeatedly raised as a defense. *Id.* at 451. This letter tells Plaintiffs that such providers are not in fact available, and Plaintiffs are entitled to know what information WCCMH considered when it made that assertion.

WCCMH asserted in its response, without offering any support, that the discovery sought is not relevant because the staffing crisis addressed in the letter exists solely due to the COVID-19 pandemic. But nowhere does the letter claim that the staffing crisis was caused solely by the COVID-19 pandemic; the only reference to COVID is in the context of an hourly rate increase implemented during the pandemic, which WCCMH expressly says did not go far enough to meet beneficiaries' needs.

The reality is that the direct care staffing crisis is nothing new, and goes back at least to the "Findings of a Survey of Community Mental Health Provider

Organizations" report of 2013: "CLS staffing" has been a standing Regional Operations Committee agenda item since November 2016 (*e.g.*, Exs. 7 and 8, 11/28/16 and 6/14/17 ROC agenda/minutes); the PIHP's 2019 "Financial Highlights" noted that "[t]he CLS rate increases that were implemented as a region were necessary and still insufficient for the provider network to continue to meet the mandated and medically necessary CLS services in Washtenaw" (Ex. 9, pg. 4, CMHPSM Financial Highlights Report for Fiscal Year 2019); and the February 2019 "Deconstructing the Direct Care Service Crisis" report (to which Sally Amos O'Neal and other WCCMH personnel contributed) concluded that "the staffing crisis outlined by the [2016] 1009 Report has worsened" (Ex. 10, pg. 12, February 2019 Report). While COVID-19 has likely exacerbated the direct care staffing crisis, it is certainly not the cause.

Regardless, even if it were true that the staffing crisis referred to in the letter existed solely because of the COVID-19 pandemic, the discovery sought would still be directly relevant. The current state of provider availability in Washtenaw County, whatever its contributing factors might be, directly bears on whether, *e.g.*, provider agencies could provide the same services; whether the current CLS rate is sufficient for Plaintiffs to receive medically necessary services; and whether Plaintiffs are at risk of institutionalization. This is core discovery.

## II. WCCMH's Repeated Boilerplate Objections are Legally Meaningless and Precluded by This Court's Ruling at the September 1, 2021 Motions Hearing.

### A. Breadth, Proportionality, and Vagueness

First, WCCMH has failed to state whether it is withholding responsive documents, in violation of Fed.R.Civ.P. 34(b)(2)(C) (requiring that an objecting party state if it is withholding responsive materials based on an objection; as this Court noted, "you're supposed to say . . . whether any documents are being withheld because of the objection."). As Defendant CMHPSM's September 10 production revealed, WCCMH has many responsive documents that should at the very least have been identified in its response. Ex. 11, CMHPSM Production Excerpt.

Second, WCCMH's generalized and boilerplate objections, copied and pasted in response to each request, are legally meaningless. As this Court explained at the September 1 hearing, specifically in response to WCCMH's prior discovery objections in this case,

> the general objection . . . doesn't work, because the Rule 34 and the interpreting cases make clear that you can't just have a boilerplate objection that applies categorically to all the responses. You need to specify what your objection is and explain what the objection is. There is plenty of case law talking about boilerplate objections. General objections are . . . meaningless.

Nowhere does WCCMH attempt to explain how any given request is overly broad or not proportional to the needs of the case, or why a given request is vague. These objections are far from the requirement, articulated by this Court on

-8-

September 1, that an objecting party "explain exactly what the burden is." These boilerplate objections are legally meaningless and should be deemed waived. *Sobel v. Imprimis Pharmaceuticals*, 2017 WL 5035837, at *4 (E.D.Mich. Oct. 26, 2017).

### B. HIPAA

WCCMH continues to assert that information sought in discovery is subject to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and therefore cannot be produced. However, a HIPAA-compliant protective order has been entered by this Court (ECF ##205). 45 C.F.R. § 164.512(e)(1)(iv) (HIPAA does not bar disclosure in an action with a HIPAA Qualified Protective Order).[1]

Moreover, this Court expressly rejected WCCMH's reliance on HIPAA objections at the September 1 motions hearing:

> I am going to order that documents related to nonparties who are recipients of services of CLS services must be produced pursuant to the protective order.

Especially in light of this clear and specific ruling, WCCMH's continued reliance on HIPAA objections is baseless.

### III. Plaintiffs are Entitled to Attorney Fees.

Pursuant to Fed.R.Civ.P. 37(a)(5)(A), if a motion to compel is granted, the Court must require the party or attorney whose conduct necessitated the motion to

---

[1] WCCMH, incidentally, was the only party to refuse to consent to that HIPAA-qualified protective order, necessitating a motion for entry (ECF #192) to which it did not respond.

pay the movant's reasonable expenses incurred in making the motion, including attorney fees.

In this case, Plaintiffs attempted to obtain the discovery sought in good faith before filing this motion, and WCCMH's nondisclosure and objections are far from substantially justified. Indeed, they are not justified at all. Given this Court's express rejection - no more than three weeks ago - of the exact objections on which WCCMH relied in responding to Plaintiffs' 2nd Requests for Production, WCCMH's objections strongly suggest a lack of good faith and a desire to impede the discovery process. Its boilerplate objections and refusal to confer on the scope of the requests have necessitated a motion that never should have been necessary, and Plaintiffs should be permitted to recover their expenses incurred in bringing it.

## CONCLUSION

The motion to compel should be granted, and WCCMH should be ordered to produce discovery as set forth herein.

Respectfully submitted,

/s/ Nicholas A. Gable

/s/ Edward P. Krugman
/s/ Jordan Berger

/s/ Kyle Williams
/s/ Simon Zagata

/s/ Lisa Ruby

September 22, 2021

-11-

## CERTIFICATE OF SERVICE

This 22nd day of September, 2021, I filed the foregoing in the Court's electronic filing system, which will effect service on all counsel of record in this action.

/s/ Nicholas A. Gable