UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK WASKUL, *et al*.,                    Civil Action No.: 16-10936
                                           Honorable Arthur J. Tarnow
                          Plaintiffs,      Magistrate Judge Elizabeth A. Stafford

v.

WASHTENAW COUNTY
COMMUNITY MENTAL
HEALTH, *et al*.,

                          Defendants.

_____/

**OPINION AND ORDER RESOLVING DISCOVERY MOTIONS
AND GRANTING PLAINTIFFS' REQUEST FOR SANCTIONS
<u>ECF NOS. 196, 201, 207</u>**

## I.     Introduction

In this opinion, the Court warns attorneys appearing in federal court

either to be competent and cooperative in discovery about electronically

stored information (ESI), or to partner with someone with ESI expertise.

Many civil practitioners understand their obligations under the rules of

discovery and readily cooperate to pursue "the just, speedy, and

inexpensive determination of every action and proceeding."  Fed. R. Civ.

P. 1.

But too often, courts have been compelled to issue "wake up call[s]" about "the need for careful thought, quality control, testing, and cooperation with opposing counsel in designing search terms or 'keywords' to be used to produce emails or other [ESI]."  *William A. Gross Const. Assocs., Inc. v. Am. Mfrs. Mut. Ins. Co*., 256 F.R.D. 134, 134 (S.D.N.Y. 2009).  Courts have had to amplify the expectation that counsel "be competent in their knowledge and ability to identify, preserve, collect, review, and produce ESI."  *DR Distributors, LLC v. 21 Century Smoking, Inc*., 513 F. Supp. 3d 839, 942 (N.D. Ill. 2021).  It is this Court's turn to ring the alarm.

Plaintiffs here have not been perfect; they made broadly worded discovery requests that were not reasonably particularized.[1]  *See* ECF No. 201-2.  But plaintiffs' counsel has tried to collaboratively develop ESI protocol for proportional discovery.  *See*, *e.g.*, ECF No. 218-1, PageID.5783-5787; ECF No. 221.  The main obstacle to effective ESI

---

[1] A document request must "describe with reasonable particularity each item or category of items to be inspected."  Fed. R. Civ. P. 34(b)(1)(A); *see also United States v. Quicken Loans, Inc*., No. 16-CV-14050, 2018 WL 7351682, at *1 (E.D. Mich. June 5, 2018) (a request for documents should not "call on the producing party to engage in a subjective guessing game of whether a document is responsive."); *Mirmina v. Genpact LLC*, No. 3:16CV00614(AWT), 2017 WL 2559733, at *3 (D. Conn. June 13, 2017) ("any and all" document requests relating to a subject matter are overly broad and burdensome).

discovery here has been defense counsel's lack of experience in and understanding of ESI discovery.

Defense counsel insists that Washtenaw County Community Mental Health (WCCMH) and Washtenaw County are justified in refusing to engage in basic ESI discovery, or to do so promptly, because they lack enough resources and manpower.  The Court rejects those excuses, orders WCCMH and the County to produce ESI discovery, and grants plaintiffs sanctions under Federal Rule of Civil Procedure 37(a)(5)(C).

## II.    Background

Four severely developmentally disabled adults join the Washtenaw Association for Community Advocacy to sue Washtenaw County Community Mental Health (WCCMH) over WCCMH's 2015 modification to its budgeting methodology.  ECF No. 146.  "WCCMH is the public community mental health authority for Washtenaw County," and is thus a "separate legal public governmental entity" from Washtenaw County. *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 437 (6th Cir. 2020); M.C.L. § 330.1000a(16). Plaintiffs allege that the budgeting methodology violates parts of the Medicaid Act, 42 U.S.C. § 1396a; the Americans with Disabilities Act (ADA) 42 U.S.C. § 12132; § 504 of the Rehabilitation Act, 29 U.S.C. § 79; the Michigan Mental Health Code, Mich.

3

Comp. Laws § 330.1722; and Michigan's Medicaid Habilitation Supports Waiver.  *Id.* The individual plaintiffs sue on their own behalf and on behalf of others who are similarly situated.  *Id.*

The Sixth Court found that plaintiffs' amended complaint stated plausible claims and reversed an order of dismissal.  *Waskul,* 979 F.3d 426.  The court found plaintiffs' claims under the Medicaid Act viable, focusing largely on plaintiffs' allegations that the new budget methodology would cause home isolation.  *Id*. at 445-458.  "The heart of Plaintiffs' complaint is that the current budget methodology prevents them from promptly receiving sufficient medically necessary services . . . as required for them to live at home and participate in the community."  *Id*. at 450.  The court also said that plaintiffs' allegations "suggest that they are at serious risk of institutionalization and that they are unreasonably confined at home . . . Plaintiffs have stated a plausible claim for violation of the integration mandate under Title II of the ADA and § 504 of the Rehabilitation Act."  *Id*. at 464.

In March 2021, the Honorable Arthur J. Tarnow held a scheduling conference with the parties.  ECF No. 191.  At the time, plaintiffs had already served third-party Washtenaw County with a subpoena for documents (ECF No. 196-1); third-party Health Management Associates

4

(HMA) with a subpoena for documents about the Community Living
Supports (CLS) program area at WCCMH and its predecessor organization
(ECF No. 201-1); and a first set of interrogatories and requests for
production of documents on WCCMH (ECF No. 201-2).  In June and July
2021, competing motions about these discovery requests followed, and
Judge Tarnow referred the motions to this Court for hearing and
determination under 28 U.S.C. § 636(b)(1)(A).  ECF No. 196; ECF No. 197;
ECF No. 201; ECF No. 202; ECF No. 207; ECF No. 209.

     The Court ordered the parties to meet and confer and to then file joint
lists of unresolved issues.  *See* ECF No. 199; ECF No. 208; ECF No. 213;
ECF No. 218; ECF No. 224.  During a September 2021 hearing, the Court
ordered the parties to meet and confer again, with this direction:

- Counsel must make a reasonable inquiry about what
  responsive documents exist, how they are stored, and how they
  can be accessed.  *Id*., PageID.5849-5850.

- Federal Rule of Civil Procedure "26(b)(1) does not include a
  categorical prohibition of discovery based upon whether the
  parties consider [the requested discovery] to be confidential."
  *Id*., PageID.5854-5855.  Parties often "agree to protective
  orders so that the dissemination of the confidential information

is limited, but . . . there isn't a categorical right to withhold documents because of a confidentiality agreement."  *Id*., PageID.5855.

- The Court rejected WCCMH's assertion that plaintiffs or the Court had to determine search terms for ESI that would be proportional to the needs of the case without WCCMH's input. *Id*., PageID.5870-5871.  WCCMH could not "throw it to the Court to figure out or throw it to the plaintiffs to figure it out."  *Id*.

- The Court also rejected WCCMH's argument that none of plaintiffs' requests were relevant or proportional.  The Court said, "I think that it is relevant to the question of affordability in general and . . . whether the methodology is making it such that people who are getting services are receiving budgets that are inadequate for their needs."  *Id*., PageID.5874.

- Addressing the proportionality factors of Rule 26(b)(1), the Court stated that the importance of the issues at stake was high, and that the parties need to do the work to "come to an agreement so that the burden is proportional, but I expect there to be some burden."  *Id*., PageID.5875.  The Court recognized

6

that ESI discovery is hard, but it emphasized that the parties

needed "to do that work in a cooperative manner." *Id.*

- The Court would "order that documents related to nonparties

  who are recipients of  . . . CLS services must be produced

  pursuant to the [qualified protective order, ECF No. 205] and for

  the parties to then meet and confer about an ESI protocol"

  before a follow-up hearing.  ECF No. 225, PageID.5876.

- Plaintiffs had a right to discover the identities of individuals

  receiving CLS services who WCCMH employee Krista

  DeWeese testified managed to live independently within their

  budgets, as those identities are relevant to WCCMH's defense,

  and the identities would be covered by the qualified protective

  order.  *Id.*, PageID.5877-5881.

- WCCMH's general and boilerplate objections violated Federal

  Rule of Civil Procedure 34 and interpreting caselaw.  *Id.*,

  PageID.5883-5884.

After the hearing, plaintiffs and HMA filed a joint statement saying

that HMA identified documents responsive to the subpoena served on it

and agreed to produce them when the Court issued an order overruling its

confidentiality objection.  ECF No. 207; ECF No. 229.  Plaintiffs, WCCMH,

and the County made some progress during their meet and confer after the September 2021 hearing, but significant disputes remained.  ECF No. 236-1.  The Court held a second hearing on October 13, 2021, and now enters this order to resolve the remaining issues.

### III.    Analysis

Under the 2015 amendment to Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Showing relevance is an "extremely low bar."  *In re Ford Motor Co. Spark Plug & 3-Valve Engine Prod. Liab. Litig*., 98 F. Supp. 3d 919, 925 (N.D. Ohio 2014) (noting that Fed. R. Evid. 401 deems evidence relevant if it has "*any* tendency to make a fact more or less probable") (emphasis supplied in *In re Ford*). The proportionality factors are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1).

The scope of discovery for subpoenas under Federal Rule of Civil Procedure 45 is the same as under Rule 26(b)(1), but a party serving a

8

subpoena on a nonparty must "take reasonable steps to avoid imposing
undue burden or expense on a person subject to the subpoena."  *In re
Subpoena of Ctr. for Mil. Readiness*, No. MC 18-51013, 2018 WL 6722247,
at *4 (E.D. Mich. Nov. 6, 2018), *adopted*, 2019 WL 4733602 (E.D. Mich.
Sept. 28, 2019) (citing Rule 45(d)(1)).

### A. Discovery Requests Directed to the County and WCCMH

Plaintiffs, WCCMH, and the County submitted a joint statement of
unresolved issues before the October hearing that identified the
outstanding issues as: (1) the scope of ESI searches; (2) sanctions; (3)
Interrogatory 8 and Request for Production of Documents (RFP) 73; and
(4) Washtenaw County wage survey documents.  ECF No. 236-1.  For
most of this opinion, the Court treats the County and WCCMH as the same
entity because the same attorney represents them, and a County employee
has been conducting ESI searches in response to RFPs served on
WCCMH.

### 1.

The Court will first address the dispute about the scope of ESI
searches.  RFP 39 requested documents about budgeting and
reimbursement of CLS services maintained in the files of several
custodians.  ECF No. 201-2, PageID.5212.  Before the October hearing,

9

plaintiffs and WCCMH agreed to search terms to satisfy RFP 39.  ECF No.

236-1, PageID.6012-6013.  *Id.*  But WCCMH refused to set a deadline for

producing documents under RFP 39, and it aborted the process of testing

other search terms.

The process for testing other search terms began in August 2021,

when plaintiffs asked WCCMH to conduct five test searches on its

"Barracuda" email network.  ECF No. 221-1, PageID.5812-5814.  WCCMH

conducted the tests but only one test produced results within the expected

range.  ECF No. 221, PageID.5807-5808; ECF No.  221-2, PageID.5817-

5818.  The search terms the parties agreed to before the October hearing

incorporated terms from the successful test, but plaintiffs also requested

that WCCMH produce another 80 randomly selected emails—20 each from

the four tests that produced results out of the expected range.  Plaintiffs

say that those 80 emails could "verify that the searches did in fact execute

as intended," could allow plaintiffs to "see if there are ways to address the

number of hits," and could reveal what may be missing from the production

related to RFP 39.  ECF No. 221, PageID.5808; ECF No. 236-1,

PageID.6014.

WCCMH has refused to produce the 80 randomly selected emails,

arguing that it does not have enough staff.  ECF No. 236-1, PageID.6017-

6018.  WCCMH uses much the same reasoning for refusing to give a

deadline for producing the requested documents.  It submits this

"proportionality analysis" to support its positions: (a) plaintiffs are only four

of their 5000 recipients; (b) it is a community health provider whose limited

budget is used to provide services, "not to purchase software to meet the

demands of Plaintiffs herein"; (c) its operating under COVID-19 constraints,

meaning that its staff hours are limited; (d) only one employee can access

the email system, and that employee has other duties; and (e) conducting

the test searches would be hard and time-consuming.  ECF No. 236-1,

PageID.6016-6017.  WCCMH did not refer to the Rule 26(b)(1)

proportionality factors, but the Court infers that WCCMH believes that the

stakes here are unimportant, that it has limited resources, and that the

burden of producing the requested discovery outweighs its likely benefit.

The Court rejects WCCMH's proportionality argument because it is

not supported by Rule 26(b)(1), because WCCMH has a duty to cooperate

in search term testing, and because WCCMH's refusal to set a deadline for

production violates Rule 34.

### 2.

The scope of discovery permitted under Rule 26(b)(1) does not

support allowing WCCMH to abort the testing of relevant search terms.  In

11

the latest joint list of unresolved issues, WCCMH did not dispute that the search terms used for the four failed tests were relevant to plaintiffs' claims, and did not assert that plaintiffs' request for the 80 emails would be futile. ECF No. 236-1, PageID.6016-6018.  WCCMH's challenge was to proportionality.  *Id.*

The first proportionality factor addresses the importance of the issues at stake.  "Generally, an action to vindicate a citizen's civil rights is considered of high importance." *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 860 (E.D. Mich. 2017) (citing Hon. Elizabeth D. Laporte, Jonathan M. Redgrave, *A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure* 26, 9 Fed. Cts. L. Rev. 19, 61 (2015)). What is more, this case involves some of the most vulnerable among us. Severely developmentally disabled plaintiffs argue that they and those similarly situated to them are being deprived of services that are medically necessary according to their individual plans of service.  *Waskul*, 979 F.3d at 437.

Plaintiffs point to evidence that a large majority of recipients like them are not receiving the services found to be medically necessary.  *See* ECF No. 201-22, PageID.5502-5503.  Without those services, CLS recipients may become isolated in their homes or institutionalized.  *Waskul*, 979 F.3d.

12

at 462.  And as plaintiffs note, this case involves "numerous cutting-edge issues in Medicaid and Disability Law."  ECF No. 218-1, PageID.5786.  It is an understatement to say that the issues in this are important.

Other proportionality factors weigh against WCCMH's attempt to minimize its efforts.  WCCMH has exclusive access to the requested emails.  As to the parties' respective resources, WCCMH claims to have a limited budget, but plaintiffs have less.  In fact, their complaint is that their budgets are too little to meet their basic medical needs.

The final proportionality factor is "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Rule 26(b)(1).  "A party objecting to a request for production of documents as burdensome must submit affidavits or other evidence to substantiate its objections."  *Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017).  "[T]his burden cannot be sustained with bald generalizations or a conclusory assertion that production will be time-consuming and/or expensive."  Hon. Craig B. Shaffer, *The "Burdens" of Applying Proportionality*, 16 Sedona Conf. J. 55, 93 (2015).

Trying to meet its burden, WCCMH argues that it does not have the budget or the staff to produce the requested 80 emails.  ECF No. 236-1, PageID.6016-6018.  But plaintiffs assert that its annual budget is $9 million.

13

ECF No. 218-1, PageID.5787.  WCCMH's assertion that it has not

budgeted for litigation is credible, but accepting its argument would suggest

that public governmental entities are exempt from normal discovery

obligations.  They are not.  Although producing ESI can be expensive,

parties are expected to bear the expense of producing documents from

their active email files, like the requests here.  *See Zubulake v. UBS*

*Warburg LLC*, 217 F.R.D. 309, 320 (S.D.N.Y. 2003) (noting that the

producing parties must bear the costs of producing documents from active

user email files).

Plaintiffs also claim that published documentation shows that

WCCMH's Barracuda network system has a greater capacity for targeted

searching than WCCMH asserted.  ECF No. 218-1, PageID.5785.  They

say that "commercially available, HIPAA-compliant E-discovery platforms"

can promptly handle volumes of email at reasonable costs; for example,

"Logikcull" charges $395 per month plus $25 per gigabyte.  ECF No. 236-1,

PageID.6015-6016.  Yet, WCCMH explored no avenues for producing

discovery other than using a single County employee who has other duties,

including responding to FOIA requests and processing payroll.  *Id*.,

PageID.6017-6018.  This failure to pursue better methods to produce the

discovery is inexcusable and borne out of a fundamental lack of experience in electronic discovery practices and rules.

**3.**

Plaintiffs' counsel argues, "In important litigation such as this, in 2021, WCCMH should not be permitted to evade its obligations to Plaintiffs and the Court by pretending that e-discovery is just too hard." *Id*., PageID.6016. The Court agrees. Washtenaw County is one of the largest in Michigan[2] and it has the third highest median income in the state.[3] Although WCCMH is a separate legal entity from the County, WCCMH is using the County's email network system and a County employee to collect the emails at issue. The Court cannot sanction the County's and WCCMH's protest that they are just too boot-strapped to engage in electronic discovery.

That said, the Court does not agree with plaintiffs that defense counsel is "pretending" that the e-discovery required here is too hard.

---

[2] See Michigan Counties by Population, Michigan Demographics by Cubit, https://www.michigan-demographics.com/counties_by_population (last visited October 30, 2021).

[3] Adrienne Roberts et al., *Oakland County Saw Michigan's Largest Personal Income in 2019*, Detroit Free Press (Mar. 1, 2021, 8:30 AM), https://www.freep.com/story/news/local/michigan/oakland/2021/03/01/personal-income-2019-oakland-county-michigan/115509764/.

Electronic discovery *is* hard for even the smartest attorney who lacks experience in the practice.  But attorneys who lack experience in electronic discovery practice do not get a free pass to avoid complying with their obligations.  United States District Judge Iain Johnson made that point earlier this year in *DR Distributors*: "'It is no longer amateur hour.  It is way too late in the day for lawyers to expect to catch a break on e-discovery compliance because it is technically complex and resource-demanding.'" 513 F. Supp. 3d at 942 (quoting Donald R. Lundberg, *Electronically Stored Information and Spoliation of Evidence*, 53 Res Gestae 131, 133 (2010)). "If attorneys are not competent in these areas, they have an ethical duty to become competent, associate themselves with attorneys who are, or to decline the representation."  *Id*. (citation and quotation marks omitted).

Perhaps the best evidence of defense counsel's lack of experience in electronic discovery is that she did not know that those having "custody" of relevant ESI are commonly called "custodians."  *DR Distributors*., 513 F. Supp. 3d at 927.  In a joint list of unresolved issues, defense counsel accused plaintiffs of "erroneously" calling WCCMH employees "custodians." ECF No. 218-1, PageID.5790.  But it was defense counsel who was in error, and the Court assumes that she also did not know about an attorney's responsibilities to identify and interview custodians.

16

Attorneys are dutybound to meaningfully interview relevant custodians "to learn the relevant facts regarding ESI and to identify, preserve, collect, and produce the relevant ESI."  *DR Distributors*., 513 F. Supp. 3d at 927.  Counsel should begin these interviews at the beginning of litigation.  *Id.* at 923-24.  "At the least, a reasonable custodian interview consists of locating the relevant people and the locations and types of ESI." *Id*. at 927.

The requirement that attorneys interview custodians is not new.  By 2004, "counsel who did not understand or take seriously ESI issues were playing Russian roulette."  *Id.* at 924.  "Since at least 2006, counsel have been required to take an active, affirmative role in advising their clients about the identification, preservation, collection, and production of ESI."  *Id*. at 926. And an attorney may not simply rely on custodian self-collection of ESI.  Instead, counsel must "test the accuracy of the client's response to document requests to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced."  *Id.*

A Model Order Relating to the Discovery of Electronically Stored Information, adopted by the Eastern District of Michigan in 2013, said that in the event of a dispute about production of ESI, each party had to

17

designate an e-discovery liaison.[4]  The liaison may be an attorney, a third-

party consultant, or an employee of the party, and must, among other

requirements, "be, or have reasonable access to those who are,

knowledgeable about the technical aspects of e-discovery, including

electronic document storage, organization, and format issues, and relevant

information retrieval technology, including search methodology."[5]

Defense counsel has been overwhelmed by the demands of ESI

discovery in this case and has not sought assistance from a knowledgeable

e-discovery liaison.  In August 2021, she at first agreed to produce over

10,000 emails in response to RFP 39, but then talked to an "IT person" and

learned that "[t]he search for ESI in the County system [ ] requires not just a

search, but then downloading and formatting before the material could be

reviewed for relevance and privilege."  ECF No. 218-1, PageID.5789; ECF

No. 225, PageID.5866.  In other words, though plaintiffs served their

discovery requests before the March 2021 scheduling conference, counsel

for WCCMH had not considered the basic methodology for producing ESI

---

[4] Principle 2.02, Model Order Relating to the Discovery of Electronically
Stored Information (ESI), United States District Court for the Eastern
District of Michigan (Sept. 20, 2013),
http://www.mied.uscourts.gov/PDFFIles/ModelESIDiscoveryOrderAndRule
26fChecklist.pdf (last viewed October 30, 2021).

[5] *Id*.

until August 2021.  She then balked at cooperating with any electronic

discovery processes, saying that WCCMH "simply [did not] have the time or

person power to do it."  ECF No. 225, PageID.5867.

Defense counsel apparently also did not know that, as the responding

party, WCCMH should have taken a commanding role in developing the

strategy to produce its responsive emails.  Generally, "[r]esponding parties

are best situated to evaluate the procedures, methodologies, and

technologies appropriate for preserving and producing their own

electronically stored information."  *The Sedona Principles, Best Practices,*

*Recommendations & Principles for Addressing Electronic Document*

Production, 19 Sedona Conf. J. 1, Principle 6 (2018); *see also Livingston v.*

*City of Chicago*, No. 16 CV 10156, 2020 WL 5253848, at *3 (N.D. Ill. Sept.

3, 2020).  Rather than propose methodologies for WCCMH to produce

documents, defense counsel left the task to plaintiffs' counsel.  For

example, plaintiffs supplied WCCMH with search terms for the test

searches that WCCMH later aborted.  *See* ECF No. 221.  And during the

September hearing, WCCMH's counsel said that it was up to plaintiffs to

propose new search terms to accomplish a proportional production of

emails.  ECF No. 225*,* PageID.5870.  Later, she refused to produce the 80

19

randomly selected emails or otherwise continue the search testing.  ECF No. 236-1, PageID.6017-6018.

Defense counsel cannot disown responsibility for designing proportional searches and search testing.  *See William A. Gross Const. Assocs.,* 256 F.R.D. at 134-136 (describing counsel's duty to cooperate in "designing search terms" and engage in testing of keywork searches).  Since she was out of her ken in managing the electronic discovery, she should have associated with an electronic discovery specialist who could assist WCCMH in fulfilling its discovery obligations.  *DR Distributors*, 513 F. Supp. 3d at 942.

**4.**

Making matters worse, although defense counsel agreed to search terms for RFP 39, she refused to commit to a deadline for producing emails that would result from that search.  Rule 34(b)(2)(B) requires a party to either produce the requested documents within the period set forth in the request "or another reasonable time period specified in the response."  And "[w]hen it is necessary to make the production in stages the response should specify the beginning and end dates of the production."  Rule 34 advisory committee notes (2015).  A party violates Rule 34 by agreeing to produce documents but "with no reasonable deadline in sight."  *Sobol v.*

20

*Imprimis Pharms*., No. CV 16-14339, 2017 WL 5035837, at *4 (E.D. Mich.
Oct. 26, 2017).

Once again, WCCMH's excuse for being unable to set a deadline for
producing the emails is that it lacks the capacity to promptly produce them.
And once again, that conclusion is an uninformed one, as no electronic
discovery expert has addressed whether the emails could be produced
more expeditiously.

**5.**

Another unresolved issue concerned Interrogatory 8 and RFP 73.
ECF No. 201-2, PageID.5190-5191, 5225-5226; ECF No.236-1,
PageID.6021-6023.  Interrogatory 8 asks WCCMH to identify people on the
Medicaid Habilitation Supports Waiver (HSW) who, in years 2019 and
2020, "[were] able to hire and manage self-determination staff within that
same cost allocation process that WCCMH uses for all individuals and/or
are able to manage within their budget, as testified to by Krista DeWeese."
ECF No. 201-2, PageID.5190 (quotation marks and brackets omitted).
RFP 73 requested documents associated with the people identified in
Interrogatory 8.  *Id*., PageID.5225-5226.

WCCMH had objected to Interrogatory 8 in part because it called for
information that is protected under the Health Insurance Portability and

21

Accountability Act of 1996 (HIPAA).  *Id*., PageID.5191.  WCCMH's other

objections were that the interrogatory was "overly broad, not proportional to

the needs of the case" and "unduly and substantially burdensome."  These

"[b]oilerplate objections are legally meaningless and amount to a waiver of

an objection."  *Siser N. Am., Inc. v. Herika G. Inc*., 325 F.R.D. 200, 209–10

(E.D. Mich. 2018).  WCCMH made no HIPAA objection to RFP 73.  ECF

No. 201-2, PageID.5226.  It made only boilerplate objections that amounted

to no objection at all.  *Id.*

WCCMH has also waived its HIPAA objection.  In May 2021, plaintiffs

moved for entry of a qualified protective order under HIPAA and its

regulations.  ECF No. 192-1.  WCCMH filed no response or objection to

plaintiffs' proposed protective order, so the Court entered in it July 2021.

ECF No. 205.  At the September 2021 hearing, the Court told defense

counsel that the information requested in Interrogatory 8 and RFP 73 could

"be produced under the qualified protective order."  ECF No. 225,

PageID.5882.  After the September hearing, WCCMH would not discuss

Interrogatory 8 or RFP 73, saying that it intends to appeal this Court's

decision to overrule WCCMH's HIPAA objection.  ECF No. 236,

PageID.236-1, PageID.6019-6023.  And at the October hearing, defense

counsel argued that the qualified protective order was insufficient to protect the CLS recipients' privacy rights.

But as noted, WCCMH was silent after plaintiffs moved for the entry of the qualified protective order. Its claims that the protective order is insufficient comes too late. And WCCMH never cited case law to support its argument that HIPAA supports its refusal to answer plaintiffs' discovery requests. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotations omitted).

Besides, "information protected by HIPAA can lawfully be disclosed through a court order alone." *Troutman v. Louisville Metro Dep't of Corr.*, No. 3:16-CV-742-DJH, 2018 WL 3041079, at *4 (W.D. Ky. June 19, 2018) (citing 45 C.F.R. § 164.512(e)). Section 164.512(e) permits disclosure of protected health information "in response to a court order." *See also United States v. Wilson*, No. 16-CR-20460, 2020 WL 1429497, at *3 (E.D. Mich. Mar. 24, 2020) (order for disclosures about Wilson under § 164.512(e) did not require his consent). Thus, the Court finds it unlikely

that Judge Tarnow will find on appeal that this order overruling WCCMH's

HIPAA objection is clearly erroneous or contrary to law.  § 636(b)(1)(A).

The Court thus orders WCCMH to answer Interrogatory 8 and

produce the documents requested by RFP 73.

**6.**

Plaintiffs requested that the County produce wage surveys; surveys

or analyses about the cost of living in the County; the availability of

individuals willing and able to provide direct care; and the value of wage

and benefits packages to workers in the County in some categories.  ECF

No. 196-1, PageID.5071-5072.  At the September hearing, plaintiffs'

counsel said that the request for surveys was not "an all-documents kind of

thing," and that counties sometimes have offices of economic development

that conduct the kind of surveys requested.  ECF No. 225-1, PageID.5883.

Defense counsel argued that plaintiffs' counsel could find any publicly

reported surveys and that defendants relied on their general proportionality

objection.  *Id*.  The Court responded that defendants' boilerplate objections

were meaningless and that defendants had to specify whether they

withheld any documents because of their objections.  *Id*.; Fed. R. Civ. P.

34(b)(2)(C).  The Court also said that "[t]he fact that the plaintiffs are able

get documents another way is not a proper objection to a request for

production of documents if those documents are within the possession,

custody, or control of the responding party."  ECF No. 225, PageID.5884;

Rule 34(a)(1).

Defense counsel then noted that the request at issue was in a

subpoena to the County, a nonparty.  ECF No. 225, PageID.5884.  The

Court reiterated that the County must produce surveys responsive to the

request that are within its possession, custody, or control.  *Id.*  If none

existed, the County needed to say so; this way, plaintiffs would know if the

County was withholding any documents.  *Id.*

At the October hearing, plaintiffs' counsel said that the County has

still neither produced the requested surveys nor said that none existed, and

that the County said the week before that it had not yet begun to look for

them.  ECF No. 236-1, PageID.6023.  Defense counsel asserted that she

could find no surveys on the topics in plaintiffs' request and that she did not

believe any one person could certify that no such survey exists.  *Id.*,

PageID.6023-6024.  She thus contends that the County cannot comply with

the request for surveys.  *Id.*

That defense counsel can find no surveys does not mean that the

County cannot comply with the request.  Counsel's duty is to certify with

her signature that she believes that the documents produced are "complete

25

and correct as of the time" of her signature, after "a reasonable inquiry."

Rule 26(g)(1).  If she cannot find, after a reasonable inquiry, that any

survey requested by plaintiffs exists, she must say so in a signed response.

*Id.*  And if no surveys exist, the County cannot be compelled to produce

them.  The Court "cannot compel a party to provide information that he or

she does not possess any more than it can compel that party to produce

documents that do not exist or are not in his possession, custody or

control."  *Roden v. Floyd*, No. 2:16-CV-11208, 2019 WL 1098918, at *3

(E.D. Mich. Mar. 8, 2019).

But it troubles the Court that plaintiffs' counsel said that the County

had not yet begun looking for surveys the week before the October hearing.

ECF No. 236-1, PageID.6023.  Defense counsel is thus warned that an

attorney who makes an improper certification may face sanctions.  Rule

26(g)(3).

**7.**

Plaintiffs request that the Court order sanctions under Rule

37(a)(5)(A).  ECF No. 236-1, PageID.6018.  Under that rule, the party who

necessitated a motion to compel must ordinarily pay the moving party's

attorney's fees and costs.  Rule 37(a)(5)(A).  But if the motion to compel is

granted in part and denied in part, the Court may "apportion the reasonable

expenses for the motion."  Rule 37(a)(5)(C).  This latter rule applies here because the Court required plaintiffs' counsel to better define requests in dispute and because WCCMH agreed to resolve some disputes without the Court having to rule on them.  ECF No. 218-1; ECF No. 225, PageID.5846-5847; ECF No. 236-1; *see also Thomas v. Bannum Place of Saginaw*, 421 F. Supp. 3d 494, 497-499 (E.D. Mich. 2019) (applying Rule 37(a)(5)(C) when the motion "was not entirely successful and significant portions of" it "got resolved prior to the hearing.").

Under Rule 37(a)(5)(C), the Court has full discretion to apportion attorney's fees and costs or to grant no sanctions at all.  *Thomas* 421 F. Supp. 3d at 497-499.  Exercising that discretion, the Court will order WCCMH and the County to reimburse plaintiffs half the attorney's fees and costs they expended in moving to compel, ECF No. 201.  Imposing this sanction against WCCMH and the County is warranted because of their stubborn and meritless insistence that they need not produce basic electronic discovery in this important litigation.

Before plaintiffs submit their bill of costs, the Court makes two warnings.  First, the bill of costs should include only allowable expenses.  Interpreting case law instructs that only the expenses incurred in preparing and litigating a motion to compel are reimbursable.  *See Nelson v. Ricoh,*

27

*USA*, No. CV 17-11390, 2018 WL 6728392, at \*4 (E.D. Mich. Mar. 1, 2018)

(collecting cases and disallowing "claim for reimbursement for work that did

not constitute preparing or litigating the motion to compel.").  Second,

"[a]ward of attorney's fees is not a license to engage in a boondoggle."

*Thomas*, 421 F. Supp. 3d at 498.  In *Thomas*, Magistrate Judge Anthony

Patti vacated an award of attorney's fees when the attorney submitted an

exorbitant bill of costs.  *Id.*, 498-99.

### B. HMA Subpoena

HMA is a health care consulting firm.  ECF No. 207.  It objected to

producing documents in response to plaintiffs' subpoena mostly because of

a confidentiality provision in a service contract between HMA and the

County.  *Id*.  The parties met and conferred after the September hearing

and agreed to a resolution pending this Court's order overruling HMA's

confidentiality objection.

A confidentiality agreement cannot bind a federal court.  *O'Hara &*

*Assocs., LLC v. Winzeler, Inc*., No. 16-11708, 2017 WL 11423043, at \*2

(E.D. Mich. Aug. 4, 2017).  "Otherwise, parties could, by agreement,

effectively create new privileges against discovery orders, no matter how

relevant the material in question may be."  *Id*.; *see also B.L. v. Schuhmann*,

No. 3:18-CV-151-RGJ-CHL, 2020 WL 3145692, at \*4–5 (W.D. Ky. June 12,

2020) (rejecting argument that Rule 45 subpoena should be quashed because of confidentiality agreement); *I.E.E. Int'l Elecs. & Eng'g, S.A. v. TK Holdings Inc.*, No. 10-13487, 2013 WL 12183637, at *1 (E.D. Mich. June 24, 2013) (emphasizing that allowing confidentiality agreements to bar discovery would undermine the truth-seeking function of discovery and empower corporations to avoid discovery).

The Court thus overrules HMA's objection that the confidentiality agreement in its service contracts precludes enforcement of plaintiffs' subpoena.

## IV. Conclusions

The Court **ORDERS:**

a. WCCMH to, by November 30, 2021:

- Produce the documents that result from the agreed search terms for RFP 39;

- Produce the 80 emails plaintiffs requested from the search testing; and

- Fully answer Interrogatory 8 and RFP 73.

b. Plaintiffs to file a bill of costs by November 15, 2021, WCCMH to respond by November 30, 2021, and plaintiffs to file any reply by December 7, 2021.

29

    c.  The County to answer plaintiffs' requests for surveys, certified

       under Rule 26(g), by November 15, 2021.

    d.  HMA to answer the subpoena under the terms agreed with

       plaintiffs by November 15, 2021.

WCCMH and its counsel are warned that any violation of this order or

more violations of the rules of discovery may result in sanctions under Rule

37 or the Court's inherent authority, and that the sanctions could include

the imposition of more monetary sanctions or a default judgment against it.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: October 31, 2021

## <u>NOTICE TO PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this order, any party may file

objections with the assigned district judge.  Fed. R. Civ. P. 72(a).  The

district judge may sustain an objection only if the order is clearly erroneous

or contrary to law.  28 U.S.C. § 636.  **"When an objection is filed to a**

**magistrate judge's ruling on a non-dispositive motion, the ruling**

**remains in full force and effect unless and until it is stayed by the**

**magistrate judge or a district judge."**  E.D. Mich. LR 72.2.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 31, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

31