UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK WASKUL, *et al*.,

Plaintiffs,

v.

WASHTENAW COUNTY COMMUNITY
MENTAL HEALTH, *et al.*,

Defendants.

Case No. 16-cv-10936
Honorable Linda V. Parker

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AMENDED MOTION TO APPROVE SETTLEMENT AGREEMENT AND FOR DECLARATORY JUDGMENT (ECF NO. 316) AND EXTENDING STAY

For the reasons stated on the record at the fairness hearing on December 11, 2024, and set forth in the Court's Opinion on today's date, Plaintiffs' Amended Motion for Approval of Settlement Agreement and for Declaratory Relief (ECF No. 316) is **GRANTED IN PART AND DENIED IN PART**.  The Court is granting Plaintiffs' request to approve the settlement agreement, previously filed on December 1, 2023 (*see* ECF No. 300-1) (hereafter the "Agreement").  The Agreement is fair, reasonable, adequate, and in the public interest.  It is annexed hereto as Exhibit 1 and is a part of this Order for all purposes.  However, the Court is denying Plaintiffs' motion to the extent they sought declaratory relief relating to the binding

effect and enforceability of this Order and the Agreement as to Defendants

Washtenaw County Community Mental Health ("WCCMH") and Community

Mental Health Partnership of Southeast Michigan ("CMHPSM") (hereafter, collec-

tively, "Local Defendants").

In accordance with and in furtherance of the approval of the Agreement, it is

hereby **ORDERED** as follows:

1.      Pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, this Order

binds the Michigan Department of Health and Human Services ("MDHHS"), plus

(a) its officers, agents, servants, employees, and attorneys, and (b) all persons in

active concert or participation with any of them, who receive actual notice hereof

by personal service or otherwise.

2.      ***Continuation of Stay***

    (a)      The Stay of this Action, except for enforcement proceedings as

        described in paragraphs 25(b) and 26 below, is hereby continued

        until the Sunset Date (as defined in paragraph 25 below).

    (b)      Following the Merger Date set forth in paragraph 27(a) below, the

        provisions of paragraph 27 shall govern as between the Plaintiffs

        and MDHHS, but Plaintiffs shall be free to seek the lifting of the

        stay vis-à-vis the Local Defendants, so that Plaintiffs may pursue

        their claims against the Local Defendants.

3.   *Certain Definitions*

(a)   "Policy" means the Medicaid Provider Manual.

(b)   "Adopted as Policy" means "incorporated in the Medicaid Provider Manual."

(c)   "Amendment," or "amend," in the context of amendments to the contract between MDHHS and CMHPSM, includes: (1) amending an existing contract during a fiscal year to include the relevant terms, or (2) executing a new contract or contract renewal in advance of a new fiscal year that includes the relevant terms.

(d)   The Centers for Medicare & Medicaid Services ("CMS") is the agency within the U.S. Department of Health and Human Services that administers the Medicaid program.

(e)   "CLS" means the Community Living Supports service.

(f)   "CLS Self-Determination Minimum Fee Schedule" refers to the minimum fee schedule described herein for HSW SD CLS.

(g)   "CMHSP" is a Community Mental Health Services Program, as that term is defined in Michigan Compiled Laws § 330.1100a(18).

(h)   "CMHPSM" is Defendant Community Mental Health Partnership of Southeast Michigan.

(i)   Habilitation Supports Waiver ("HSW") refers to the Medicaid program of home-and-community-based services administered by MDHHS pursuant to Section 1915(c) of the Social Security Act, the terms of which are in a waiver document filed with and approved by CMS.

(j)   HSW Self-Determination Community Living Supports ("HSW SD CLS") means Community Living Supports covered through and defined by the Habilitation Supports Waiver document filed with and approved by CMS and provided via a self-determination arrangement.  This term does not include CLS that is not covered through the Habilitation Supports Waiver, nor does it include CLS covered through the Habilitation Support Waiver provided via any arrangement other than a self-determination arrangement (for example, an agency arrangement).

(k)   HSW Self-Determination Overnight Health and Safety Supports ("HSW SD OHSS").  Overnight Health and Safety Supports covered through and defined by the Habilitation Supports Waiver document filed with and approved by CMS and provided via a self-determination arrangement.  This term does not include OHSS that is not covered through the Habilitation Supports

4

Waiver, nor does it include OHSS covered through the Habilita-

tion Supports Waiver provided via any arrangement other than a

self-determination arrangement (for example, an agency arrange-

ment).

(l)    "IPOS" means the Individual Plan of Service.

(m)    "OHSS Self-Determination Minimum Fee Schedule" refers to the

minimum fee schedule described herein for HSW SD OHSS.

(n)    Prepaid Inpatient Health Plans ("PIHPs"): the Prepaid Inpatient

Health Plans responsible for managing and paying claims for

HSW services and other services pursuant to a managed care con-

tract with MDHHS.

(o)    "Self Determination" includes both (1) participant direction of ser-

vices as described in Appendix E of the HSW, and (2) "self direc-

tion" as that term is used in MDHHS's Self-Direction Technical

Requirements.

(p)    The Minimum Fee Schedule Provisions of this Order are para-

graphs 8, 9, 11, 12, and 16 hereof.

(q)    "WCCMH" is Defendant Washtenaw County Community Mental

Health.

5

(r)     Other Capitalized terms used herein shall have the meanings as-
cribed to them herein or, if not so ascribed, then as ascribed in
Section B of the Agreement.

4.     The Court shall retain jurisdiction over this Action for purposes of enforcing
this Order until the time specified in paragraph 25(c)(iii) below.

5.     Enforcement of this Order against MDHHS shall be subject to paragraph 26
below.

6.     Revocable only in the circumstances described in paragraphs 21 and 24 be-
low, and not subject to recoupment on any basis other than for hours not expended,
MDHHS shall continue to cause Plaintiffs Derek Waskul, Kevin Wiesner, Cory
Schneider, and Hannah Ernst to have available going forward, through their Fiscal
Intermediaries, funding for their HSW SD CLS and HSW SD OHSS budgets (in-
cluding such changes in authorized hours as may be effected from time to time) at
$31 per hour for HSW SD CLS and $21.70 per hour for HSW SD OHSS.

7.     MDHHS is required to implement the Minimum Fee Schedule Provisions of
this Order only if each of the following contingencies (the "D1 Contingencies") is
met:

(a)     The Michigan legislature appropriates sufficient funds to pay for
capitation rate increases to implement the CLS and OHSS Self-

Determination Minimum Fee Schedules for HSW SD CLS and HSW SD OHSS, respectively, for all PIHPs statewide.

(b)    CMHPSM executes a contract amendment agreeing to the Minimum Fee Schedule Provisions.

(c)    CMS approves the contract amendment and capitation rate increases to account for the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

(d)    CMS approves any amendments to Michigan's Section 1115 demonstration waivers and Michigan's Section 1915(c) Habilitation Supports Waiver that CMS deems necessary to implement the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

(e)    CMS issues any other approvals that CMS deems necessary for implementation of the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide, including directed payment approval (*see* 42 C.F.R. § 438.6(c)), if CMS determines that any such approvals are necessary to implement the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

8.    Subject to the D1 Contingencies, MDHHS shall amend its contract with

CMHPSM so that:

(a)    For each HSW SD CLS participant, the self-determination budget

created jointly by CMHPSM (or a subcontractor to which

CMHPSM delegates this function) and the participant pursuant to

Appendix E of the HSW shall provide for no less than the

amounts set forth in the CLS Self-Determination Minimum Fee

Schedule (Table 1 below), as adjusted pursuant to paragraph 16

hereof, for each authorized unit of HSW SD CLS in the partici-

pant's IPOS.

| Table 1 | |
|---|---|
| Service Code | Unit (.25 hour) rate per participant |
| H2015 | $7.75 |
| H2015UN (2 participants) | $3.87 |
| H2015UP (3 participants) | $2.59 |
| H2015UQ (4 participants) | $1.94 |
| H2015UR (5 participants) | $1.56 |
| H2015US (6+ participants) | $1.10 |

This means, for example, that if an IPOS provides that the HSW

SD CLS participant will receive 100 units per month of one-on-

one HSW SD CLS (Service Code H2015, with a unit being a 15-

minute increment), the funding in the associated budget for that

HSW SD CLS must be equal to or greater than $775/month (100

units x $7.75 minimum rate).  If an IPOS specifies 2-on-1 (or greater) CLS staffing in certain circumstances, then the budget shall be calculated, and CMHPSM shall pay, separately at the 1-on-1 rate for each staffer associated with the multiple staffing.

(b)    CMHPSM shall reimburse to the fiscal intermediary the amount determined by the approved budget (which shall be at least the amount determined by the CLS and OHSS Self-Determination Minimum Fee Schedules) for HSW SD CLS and HSW SD OHSS units, respectively, actually performed during the term of the IPOS.  Nothing in this provision shall prohibit CMHPSM from advancing funds to the fiscal intermediary in anticipation of such actual performance.

9.    Subject to the D1 Contingencies, MDHHS shall amend its contract with CMHPSM to require that a minimum fee schedule (the "OHSS Self-Determination Minimum Fee Schedule") likewise applies to self-directed HSW SD OHSS services, with the table entries for OHSS in effect from time to time being 70% of those for HSW SD CLS then in effect.

10.    MDHHS shall amend the Medicaid Provider Manual to reflect the content of Attachment A of the Agreement, titled "Costs Included in Community Living

Supports Code H2015," to the extent MDHHS determines that it does not already do so.

11.    Subject to the D1 Contingencies, and subject to the adjustments set forth in paragraph 16 hereof, the CLS and OHSS Self-Determination Minimum Fee Schedules and the associated funding for each of them described in paragraphs 8, 9, and 12 of this Order, shall be the totality of the funding provided to cover all costs for the HSW SD CLS participant's HSW SD CLS and HSW SD OHSS (*e.g.*, staff wages, transportation, employer costs, training, and activity fees).

12.    Subject to the D1 Contingencies, MDHHS shall increase the actuarially sound capitation rates for CMHPSM to account for the CLS and OHSS Self-Determination Minimum Fee Schedules.

(a)    The amount of this capitation rate increase will be at the sole discretion of MDHHS, but it will be subject to CMS's annual approval of the amended capitation rates as actuarially sound, as required by federal Medicaid law.

(b)    This requirement will be deemed satisfied when CMS approves, as actuarially sound, the capitation rates applicable to CMHPSM.

(c)    In addition, MDHHS shall ensure that the actuary employed by or under contract with MDHHS to certify annual capitation rates also certifies, at least annually, that the HSW CLS rate cell(s) of

> MDHHS's capitation matrix for CMHPSM are not cross-subsi-
> dized by any other rate cell and are "actuarially sound," as that
> term is defined in 42 C.F.R. § 438.4.

13.    Contingent on CMHPSM signing a contract amendment(s) containing the relevant provision and CMS approving the contract amendment (the "D2 Contingencies" with respect to such amendment), MDHHS shall amend its contract with CMHPSM to require CMHPSM to offer new and existing beneficiaries who receive CLS services under the HSW (other than those previously terminated from self-determination) the choice to self-determine CLS services.  To the extent the D2 Contingencies have not been met by September 30, 2025 with respect to this requirement, MDHHS shall promptly commence, and diligently pursue to completion, the process of Adopting such provision as Policy.

14.    MDHHS shall instruct the Michigan Office of Administrative Hearings and Rules ("MOAHR") that it is MDHHS policy that, after the participant has exhausted the participant's internal appeal to the PIHP/CMHSP consistent with 42 C.F.R. §§ 438.402, 438.408(f):

> (a)    Administrative Law Judges ("ALJs") in Medicaid Fair Hearings
> have the authority in hearings challenging the CLS and/or OHSS
> portions of an HSW SD CLS participant's self-determination
> budget:

11

(i)    To review HSW SD CLS participants' assertions that an insufficient number of units of HSW SD CLS or HSW SD OHSS was authorized and issue orders as specified in subparagraphs (b) and (c) below. For the avoidance of doubt, the instruction to MOAHR set forth in this paragraph 14(a)(i) shall include that the scope of the ALJs' authority to review such assertions, and enter orders with respect thereto, includes an assertion by the HSW SD CLS participant regarding the proper allocation between HSW SD CLS and HSW SD OHSS, as those services are defined in the Medicaid Provider Manual; and

(ii)    To review the budget attached to an HSW SD CLS participant's IPOS and issue orders as specified in subparagraphs (b) and (c) below.

(b)    When reviewing the CLS and/or OHSS portions of an HSW SD CLS recipient's self-determination budget, or the number of units of HSW SD CLS or HSW SD OHSS that have been authorized, ALJs have authority to issue an order, if appropriate based on the proofs presented on the record at the hearing, to:

(i)     reverse the determination and require a specific budget or authorization as described in paragraph (c)(i) below, or

(ii)    reverse the determination and remand to the PIHP/ CMHPSM for further evidence or assessment as described in paragraph (c)(ii) below, or

(iii)   affirm the determination as described in paragraph (c)(iii) below.

(c)     Specifically,

(i)     If the ALJ concludes that the proofs presented on the record at the hearing establish that the PIHP/CMHSP's decision with respect to the HSW SD CLS and/or HSW SD OHSS portions of an HSW SD CLS participant's self-determination budget and/or the number of authorized units of HSW SD CLS or HSW SD OHSS was inconsistent with medical necessity as set forth in the Medicaid Provider Manual *and* that such proofs establish that a specific budget level or authorization requested by the participant is: (1) medically necessary, (2) otherwise consistent with state and federal law and policy, and (3) necessary to implement the IPOS, then the ALJ shall reverse

13

the determination and direct entry of the specific budget level or number of authorized units of HSW SD CLS or HSW SD OHSS requested by the participant.

(ii)   If the ALJ concludes that the proofs presented on the record at the hearing establish that the PIHP/CMHSP's decision with respect to the CLS and/or OHSS portions of an HSW SD CLS participant's self-determination budget and/or the number of authorized units of HSW SD CLS or HSW SD OHSS was inconsistent with medical necessity as set forth in the Medicaid Provider Manual but that such proofs do not establish that a specific budget level or number of authorized units is (1) medically necessary, (2) otherwise consistent with state or federal law and policy, and (3) necessary to implement the IPOS, then the ALJ shall reverse the determination and remand to the PIHP/CMHSP for reconsideration based on the ALJ's findings and order, specifying to the extent reasonably possible the parameters of such reconsideration.

(iii)   If the ALJ concludes that the proofs presented on the record at the hearing do not establish that the

14

PIHP/CMHSP's decision was inconsistent with medical necessity as set forth in the Medicaid Provider Manual or otherwise inconsistent with state or federal law or policy, then the ALJ shall uphold the determination.

(d)   ALJs in Medicaid Fair Hearings have the authority to review PIHPs'/CMHSPs' decisions to terminate a self-determination arrangement.

(i)   In such a Medicaid Fair Hearing, if the ALJ determines that the evidence presented on the record at the hearing does not establish that there was good cause to terminate the self-determination arrangement, then the ALJ will reverse the PIHP/CMHSP's decision to terminate the self-determination arrangement and direct the continuation of such arrangement, rather than remand to the PIHP/CMHSP for reconsideration.

(ii)   The requirement in paragraph 14(d)(i) shall be implemented as Policy notwithstanding any provision of existing MDHHS Policy or guidance stating that termination of self-determination is not the subject of a Medicaid Fair Hearing.

(e)    MDHHS shall supply to counsel for Plaintiffs a copy of the instruction to MOAHR required by this paragraph 14.

(f)    Notwithstanding such instruction to MOAHR, MDHHS may reserve to itself, as opposed to the ALJ, the final decision as to the authorized budget, the service authorization level, or the termination of self-determination arrangements, *provided, however*, that the ultimate determination be made within the timeframe for "final administrative action" as set forth in 42 C.F.R. § 431.244(f).

15.    MDHHS shall:

(a)    Amend the Medicaid Provider Manual to reflect the content of Attachment B of the Agreement, to the extent MDHHS determines that it does not already do so.

(b)    Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) discuss with the HSW SD CLS participant during the person-centered planning process various components of CLS, such as transportation, activities, staff wages, employer costs, training time, and similar topics, as well as, if relevant, the amount, scope, and frequency of each such component that may be medically necessary for the participant, as defined by Attachment B to the Agreement.

(c)     Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) ensure that the fiscal intermediary does not make a final determination on the amount, scope, or duration of services and that the PIHP (or its CMHSP subcontractor) does not delegate any aspect of creating the budget to fiscal intermediary personnel.

(d)     Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) notify in writing any HSW SD CLS participant whose self-determination arrangement is at risk of termination that such risk exists.

     (i)     The notice shall specify in such detail as is reasonably practicable the issues that have led to the risk of termination, and shall provide opportunities for meaningful problem solving that involve the HSW SD CLS participant.

     (ii)    If, notwithstanding the problem-solving efforts, the PIHP (or the CMHSP as its subcontractor) believes that termination is necessary, then it shall issue an **Advance Action Notice**, with appeal rights consistent with those provided in 42 C.F.R. § 438.400 *et seq*.

(e)     Subject to the D2 Contingencies, amend the Contract with CMHPSM to add a new sentence to paragraph 1(Q) (General Requirements in Schedule A – Statement of Work) to read: "The Contractor shall comply with any decision issued by an Administrative Law Judge in a Medicaid Fair Hearing."

(f)     Subject to the D2 Contingencies, amend the contract with CMHPSM to require that, when CMHPSM reduces an HSW SD CLS participant's self-determination budget at an annual renewal or otherwise, CMHPSM provide, in writing, a specific justification for the reduction, which shall explain why CMHPSM believes the participant does not need the same amount, duration, and scope of HSW services that the participant was previously assessed to need.  To the extent the D2 Contingencies have not been met by September 30, 2025 with respect to this requirement, MDHHS shall promptly commence, and diligently pursue to completion, the process of Adopting such provision as Policy.  For the avoidance of doubt:

(i)     A budget reduction or termination during the term of an IPOS shall be treated as a "reduction, suspension, or termination" for purposes of internal appeal and Fair

18

Hearing rules (including advance Adverse Benefit Determination notice and continuation of benefits, when applicable), and

(ii)    A budget reduction or termination at annual renewal shall be treated as a denial of a requested service, but CMHPSM shall, in the absence of exigent circumstances, provide the written justification required herein as soon as practicable and, in any event, no later than 14 days before the PCP meeting for the renewal.

(g)    Subject to the D2 Contingencies, amend the contract with CMHPSM to require that, when WCCMH does not approve, or approves a limited authorization of, a request for inclusion in the IPOS of: (i) a service, or (ii) one or more specific aspects of the amount, scope, or duration of a service, CMHPSM shall ensure that:

(i)    the item is listed in a separate section of the IPOS titled "Requests Not Approved," and

(ii)    WCCMH provides an adverse benefit determination that briefly but concretely sets forth its reasoning for not approving the request.

19

The requirements in this paragraph 15(g) shall apply regardless of whether the non-approval or limited approval takes place during the person-centered planning process or after its conclusion.  To the extent the D2 Contingencies have not been met by September 30, 2025 with respect to this paragraph 15(g), MDHHS shall promptly commence, and diligently pursue to completion, the process of Adopting such provision as Policy.

16.   Effective for the rates applicable to SFY 2026 (beginning October 1, 2025) and thereafter, the rates in the CLS Self-Determination Minimum Fee Schedule in each fiscal year, if the CLS Self-Determination Minimum Fee Schedule is in effect as required herein, shall be the rate set forth in Table 1 in paragraph 8 hereof (the "Base Rates") adjusted by the cumulative percentage change in the nationwide Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) for the period beginning March 31, 2024 and ending on the March 31 preceding the start of the fiscal year in question (that is, the rates for SFY 2027 shall be the Base Rates adjusted by the percentage change in the CPI-W from March 31, 2024 to March 31, 2026), provided, however, that the rates in the CLS Self-Determination Minimum Fee Schedule in any fiscal year, shall not be less than the Base Rates set forth in Table 1. For example:

- If the CPI-W increases by 3 percent from March 31, 2024 to March 31, 2025, the rates applicable for SFY 2026 shall be the Base Rates increased by 3 percent.

- If the CPI-W decreases by 3 percent from March 31, 2024 to March 31, 2025, the rates applicable for SFY 2026 shall be the Base Rates without any adjustment.

- If the CPI-W increases by 5 percent from March 31, 2024 to March 31, 2026, the rates applicable for SFY 2027 shall be the Base Rates increased by 5 percent.

17. ***Providing Non-Binding Guidance***

(a) MDHHS shall provide to PIHPs and CMHSPs non-binding guidance containing examples illustrating the operation of the contract and Policy amendments effected hereby that MDHHS, in its sole discretion, deems appropriate.

(b) If Attachment C of the Agreement takes effect, then no later than 90 days after it does so, MDHHS shall provide to PIHPs and CMHSPs non-binding guidance containing examples illustrating the operation of Attachment C of the Agreement that MDHHS, in its sole discretion, deems appropriate.

(c)     MDHHS shall consult with counsel for Plaintiffs concerning such non-binding guidance, but the form and content thereof remain in MDHHS's sole discretion.

18.    MDHHS shall request from the Michigan legislature that an appropriation to fund the CLS and OHSS Self-Determination Minimum Fee Schedules be included in the ongoing and base part of MDHHS's budget, rather than included as a one-time appropriation.

19.    MDHHS will provide Plaintiffs an opportunity to comment on MDHHS's draft applications to CMS for approval of any applicable state plan amendments, waiver amendments, or state-directed payments required to implement the Settlement Agreement, and MDHHS will consider Plaintiffs' comments.

20.    All of the requirements herein except the Minimum Fee Schedule Provisions shall become effective on March 2, 2025, and all requirements herein shall remain in effect thereafter until the Sunset Date described in paragraph 25 below, at which point all provisions of this Order shall no longer be enforceable and the obligations herein shall cease to exist, except for the provisions of paragraph 27 of this Order.

(a)     To the extent that some of the requirements herein (for example, contract amendments and Medicaid Provider Manual modifications) are not completed by until after March 2, 2025, MDHHS will not be deemed in violation of this Order so long as it

22

continues to make diligent, good faith efforts to finalize what is required to implement these requirements.

21.     On the date 10 calendar days after Director Hertel or her successor certifies to Plaintiffs and the Court that all of the D1 Contingencies have been met:

(a)     the Minimum Fee Schedule Provisions of this Order (*i.e.*, paragraphs 8, 9, 11, 12, and 16 hereof) shall become operative, and

(b)     the interim funding for Plaintiffs Derek Waskul, Kevin Wiesner, Cory Schneider, and Hannah Ernst under paragraph 6 above shall be terminated and shall be supplanted by such Minimum Fee Schedule Provisions.

22.     MDHHS shall make good faith efforts to satisfy the D1 Contingencies as promptly as reasonably practicable given the nature of the Contingencies.

(a)     If any such D1 Contingencies have not been met by June 1, 2025 (the "Drop Dead Date"), and there has not by that time been express written consent of all Parties to an extension of the Drop Dead Date, then the Minimum Fee Schedule Provisions of the Settlement Agreement shall not come into effect.

(b)     Notwithstanding subparagraph (a) above, if the only uncompleted Contingencies as of the Drop Dead Date are PIHP contract amendments, CMS approvals thereof, and/or CMS approvals of

the new capitated rates, then the Drop Dead Date shall be deemed

extended by six months as to those uncompleted amendments and

approvals only.

23.    If the Minimum Fee Schedule Provisions of this Order have not come into

effect by the date that is 30 days before the Drop Dead Date, MDHHS shall at that

time begin, and shall complete by 120 days after the Drop Dead Date or, if applica-

ble, the extended Drop Dead Date, the process for making amendments to the

Medicaid Provider Manual that are necessary to reflect the contents of Attachment

C of the Agreement.

24.    Sixty (60) days after the Drop Dead Date, or, if applicable, the extended

Drop Dead Date, the obligation of MDHHS to make the payments to or on behalf

of the individual Plaintiffs as described in paragraph 6 hereof shall expire.

25.    On September 30, 2029 (the "Sunset Date"), all provisions of this Order

shall expire, except for paragraph 27 hereof.

(a)    In anticipation of such expiration, MDHHS shall begin no later

than April 1, 2029, and shall complete before June 30, 2029, the

process for making amendments to the Medicaid Provider Manual

to reflect the content of Attachment C of the Agreement.

(b)    Any motion to enforce MDHHS's obligation to promulgate the

amendments described in the foregoing paragraph 25(a) shall not

be subject to the informal consultation obligations of para-

graph 26(a)(i) of this Order and shall be filed before the Sunset

Date.  Such motion shall remain within the Court's jurisdiction,

including after the Sunset Date as described in paragraph 25(c)(i)

below.

(c)     Upon the Sunset Date, excepting only paragraphs 27 below

and 25(b) above, all provisions of this Order shall no longer be en-

forceable against MDHHS, and the obligations of MDHHS herein

shall cease to exist.

   (i)     Upon the later of the Sunset Date or, if a motion is filed

           pursuant to paragraph 25(b) above then 90 days after the

           entry of a court order that fully adjudicates such a mo-

           tion, the Action may, upon motion, be dismissed as

           against MDHHS.

   (ii)    Such dismissal as against MDHHS shall be with preju-

           dice as to any claims accruing prior to the Sunset Date

           and without prejudice as to any claims accruing thereaf-

           ter.

   (iii)   Upon such dismissal, the Court's continuing jurisdiction

           over the Settlement Agreement shall cease.

(iv)    Neither such dismissal, nor the expiration of MDHHS's

obligations under this Order, shall by itself effect the

modification or vacatur of any policies, guidance, or

other actions implemented by MDHHS pursuant hereto,

but such policies, guidance, or other actions shall upon

such expiration and dismissal be subject to ordinary regu-

latory processes of amendment, vacatur, or modification.

26.    ***Enforcement; Limitation of Remedy Against MDHHS and Preservation of***

***Rights and Remedies Against Local Defendants.***

(a)    Enforcement of this Order shall be sought by motion in this Ac-

tion (to which the stay in this Order shall not apply) and shall be

subject to the following procedures:

(i)    No less than 30 days prior to filing any motion related to

enforcement of this Order, the moving Party shall notify

the non-moving Party of the alleged noncompliance and

request a meeting for the purpose of attempting to resolve

the alleged noncompliance.

(ii)    If the Parties fail to resolve the allegation of noncompli-

ance raised in the informal consultation described in

paragraph 26(a)(i), either Party may file a motion with the Court seeking a judicial determination on the issue.

(iii)   Motions relating to alleged noncompliance will not seek to hold MDHHS in criminal contempt of court.

(iv)   Motions relating to alleged noncompliance will not seek to hold MDHHS in civil contempt of court except based on an allegation of MDHHS's willful noncompliance with a previous order of enforcement on the same subject matter.  If Plaintiffs do bring a motion to hold MDHHS in civil contempt of court under the limitations in this paragraph, the Court may hold MDHHS in civil contempt of court only if the Court makes a finding of MDHHS's willful noncompliance with a previous order of enforcement on the same subject matter.  Nothing in this paragraph shall preclude Plaintiffs from seeking attorneys' fees and costs on a motion to enforce, whether under 42 U.S.C. § 1988 or otherwise.

(b)   During any time for which MDHHS is required by this Order to place the contents of Attachment C of the Agreement in the Medicaid Provider Manual, any enforcement actions brought by

27

Plaintiffs against MDHHS related to "costing out" of an HSW SD CLS and/or HSW SD OHSS budget, or the sufficiency of such budget to implement the IPOS, are limited to whether MDHHS complied with the requirements of this Order to place the contents of Attachment C of the Agreement in the Medicaid Provider Manual.

(c)     Plaintiffs' forbearance of enforcement directly against MDHHS in subparagraph  (b) shall not limit the right of Plaintiffs to seek enforcement of Attachment C of the Agreement, including without limitation the costing out and sufficiency provisions thereof, against WCCMH or CMHPSM.

(d)     Nothing herein shall prevent Plaintiffs from continuing to prosecute the Action against CMHPSM and/or WCCMH, and nothing herein shall limit the relief Plaintiffs may seek against those Defendants.

27.   ***Merger of Claims into This Order***

(a)     On March 3, 2025 (the "Merger Date"), but effective as of December 11, 2024, all claims that Plaintiffs brought or could have brought against MDHHS in this Action shall be extinguished as separate claims and shall merge into this Order.

(b)     From and after the Merger Date, Plaintiffs shall have no further recourse against MDHHS in respect of such merged and extinguished claims except pursuant to the terms hereof.

(c)     The claims compromised, settled, and resolved by the Agreement, and merged into and extinguished by this Order pursuant to subparagraph (a) above, include all claims that were raised in the Complaint or Amended Complaint, and all claims that could have been raised in the Complaint or Amended Complaint, on behalf of all Plaintiffs.  As of the Merger Date, in consideration of the obligations contained herein, and the benefits provided or to be provided, the Settlement Agreement and this Order shall fully resolve, extinguish, and finally and forever bar, and the Plaintiffs hereby give up, all claims described in this paragraph 27.

(d)     The extinguishment of such claims, and/or their merger into this Order, shall be limited to MDHHS and shall not preclude claims against any other person or entity, including without limitation WCCMH and/or CMHPSM.

(e)     Nothing herein shall preclude a Plaintiff from asserting in a Fair Hearing that the authorized CLS units are insufficient to meet that Plaintiff's needs.

(f)     Nothing herein shall preclude a Plaintiff from asserting claims

against MDHHS that accrue after the Sunset Date in a new law-

suit.

**IT IS SO ORDERED:**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: January 27, 2025

30