UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEREK WASKUL, *et al.*,

Plaintiffs,

v.

WASHTENAW COUNTY COMMUNITY
MENTAL HEALTH, *et al.*,

Defendants.

Case No. 16-cv-10936
Honorable Linda V. Parker

**<u>CORRECTED ORDER GRANTING IN PART AND DENYING
IN PART PLAINTIFFS' AMENDED MOTION TO APPROVE
SETTLEMENT AGREEMENT AND FOR DECLARATORY
JUDGMENT (ECF NO. 316) AND EXTENDING STAY</u>**

For the reasons stated on the record at the fairness hearing on December 11, 2024, and set forth in the Court's Opinion on today's date, Plaintiffs' Amended Motion for Approval of Settlement Agreement and for Declaratory Relief (ECF No. 316) is **GRANTED IN PART AND DENIED IN PART**. The Court is granting Plaintiffs' request to approve the settlement agreement, previously filed on December 1, 2023 (*see* ECF No. 300-1) (hereafter the "Agreement"). The Agreement is fair, reasonable, adequate, and in the public interest. It is annexed hereto as Exhibit 1 and is a part of this Order for all purposes. However, the Court is denying Plaintiffs' motion to the extent they sought declaratory relief relating to the binding

1

effect and enforceability of this Order and the Agreement as to Defendants Washtenaw County Community Mental Health ("WCCMH") and Community Mental Health Partnership of Southeast Michigan ("CMHPSM") (hereafter, collectively, "Local Defendants").

In accordance with and in furtherance of the approval of the Agreement, it is hereby **ORDERED** as follows:

1.    Pursuant to Rule 65(d)(2) of the Federal Rules of Civil Procedure, this Order binds the Michigan Department of Health and Human Services ("MDHHS"), plus (a) its officers, agents, servants, employees, and attorneys, and (b) all persons in active concert or participation with any of them, who receive actual notice hereof by personal service or otherwise.

2.    ***Continuation of Stay***

   (a)    The Stay of this Action, except for enforcement proceedings as described in paragraphs 25(b) and 26 below, is hereby continued until the Sunset Date (as defined in paragraph 25 below).

   (b)    Following the Merger Date set forth in paragraph 27(a) below, the provisions of paragraph 27 shall govern as between the Plaintiffs and MDHHS, but Plaintiffs shall be free to seek the lifting of the stay vis-à-vis the Local Defendants, so that Plaintiffs may pursue their claims against the Local Defendants.

3.   ***Certain Definitions***

(a)   "Policy" means the Medicaid Provider Manual.

(b)   "Adopted as Policy" means "incorporated in the Medicaid Provider Manual."

(c)   "Amendment," or "amend," in the context of amendments to the contract between MDHHS and CMHPSM, includes: (1) amending an existing contract during a fiscal year to include the relevant terms, or (2) executing a new contract or contract renewal in advance of a new fiscal year that includes the relevant terms.

(d)   The Centers for Medicare & Medicaid Services ("CMS") is the agency within the U.S. Department of Health and Human Services that administers the Medicaid program.

(e)   "CLS" means the Community Living Supports service.

(f)   "CLS Self-Determination Minimum Fee Schedule" refers to the minimum fee schedule described herein for HSW SD CLS.

(g)   "CMHSP" is a Community Mental Health Services Program, as that term is defined in Michigan Compiled Laws § 330.1100a(18).

(h)   "CMHPSM" is Defendant Community Mental Health Partnership of Southeast Michigan.

(i)     Habilitation Supports Waiver ("HSW") refers to the Medicaid program of home-and-community-based services administered by MDHHS pursuant to Section 1915(c) of the Social Security Act, the terms of which are in a waiver document filed with and approved by CMS.

(j)     HSW Self-Determination Community Living Supports ("HSW SD CLS") means Community Living Supports covered through and defined by the Habilitation Supports Waiver document filed with and approved by CMS and provided via a self-determination arrangement.  This term does not include CLS that is not covered through the Habilitation Supports Waiver, nor does it include CLS covered through the Habilitation Support Waiver provided via any arrangement other than a self-determination arrangement (for example, an agency arrangement).

(k)     HSW Self-Determination Overnight Health and Safety Supports ("HSW SD OHSS").  Overnight Health and Safety Supports covered through and defined by the Habilitation Supports Waiver document filed with and approved by CMS and provided via a self-determination arrangement.  This term does not include OHSS that is not covered through the Habilitation Supports

Waiver, nor does it include OHSS covered through the Habilita-

tion Supports Waiver provided via any arrangement other than a

self-determination arrangement (for example, an agency arrange-

ment).

(l)   "IPOS" means the Individual Plan of Service.

(m)   "OHSS Self-Determination Minimum Fee Schedule" refers to the

minimum fee schedule described herein for HSW SD OHSS.

(n)   Prepaid Inpatient Health Plans ("PIHPs"): the Prepaid Inpatient

Health Plans responsible for managing and paying claims for

HSW services and other services pursuant to a managed care con-

tract with MDHHS.

(o)   "Self Determination" includes both (1) participant direction of ser-

vices as described in Appendix E of the HSW, and (2) "self direc-

tion" as that term is used in MDHHS's Self-Direction Technical

Requirements.

(p)   The Minimum Fee Schedule Provisions of this Order are para-

graphs 8, 9, 11, 12, and 16 hereof.

(q)   "WCCMH" is Defendant Washtenaw County Community Mental

Health.

5

(r)     Other Capitalized terms used herein shall have the meanings as-
cribed to them herein or, if not so ascribed, then as ascribed in
Section B of the Agreement.

4.     The Court shall retain jurisdiction over this Action for purposes of enforcing
this Order until the time specified in paragraph 25(c)(iii) below.

5.     Enforcement of this Order against MDHHS shall be subject to paragraph 26
below.

6.     Revocable only in the circumstances described in paragraphs 21 and 24 be-
low, and not subject to recoupment on any basis other than for hours not expended,
MDHHS shall continue to cause Plaintiffs Derek Waskul, Kevin Wiesner, Cory
Schneider, and Hannah Ernst to have available going forward, through their Fiscal
Intermediaries, funding for their HSW SD CLS and HSW SD OHSS budgets (in-
cluding such changes in authorized hours as may be effected from time to time) at
$31 per hour for HSW SD CLS and $21.70 per hour for HSW SD OHSS.

7.     MDHHS is required to implement the Minimum Fee Schedule Provisions of
this Order only if each of the following contingencies (the "D1 Contingencies") is
met:

(a)     The Michigan legislature appropriates sufficient funds to pay for
capitation rate increases to implement the CLS and OHSS Self-

6

Determination Minimum Fee Schedules for HSW SD CLS and HSW SD OHSS, respectively, for all PIHPs statewide.

(b)    CMHPSM executes a contract amendment agreeing to the Minimum Fee Schedule Provisions.

(c)    CMS approves the contract amendment and capitation rate increases to account for the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

(d)    CMS approves any amendments to Michigan's Section 1115 demonstration waivers and Michigan's Section 1915(c) Habilitation Supports Waiver that CMS deems necessary to implement the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

(e)    CMS issues any other approvals that CMS deems necessary for implementation of the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide, including directed payment approval (*see* 42 C.F.R. § 438.6(c)), if CMS determines that any such approvals are necessary to implement the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

8.      Subject to the D1 Contingencies, MDHHS shall amend its contract with

CMHPSM so that:

(a)      For each HSW SD CLS participant, the self-determination budget

        created jointly by CMHPSM (or a subcontractor to which

        CMHPSM delegates this function) and the participant pursuant to

        Appendix E of the HSW shall provide for no less than the

        amounts set forth in the CLS Self-Determination Minimum Fee

        Schedule (Table 1 below), as adjusted pursuant to paragraph 16

        hereof, for each authorized unit of HSW SD CLS in the partici-

        pant's IPOS.

| Table 1 | |
|---|---|
| Service Code | Unit (.25 hour) rate per participant |
| H2015 | $7.75 |
| H2015UN (2 participants) | $3.87 |
| H2015UP (3 participants) | $2.59 |
| H2015UQ (4 participants) | $1.94 |
| H2015UR (5 participants) | $1.56 |
| H2015US (6+ participants) | $1.10 |

This means, for example, that if an IPOS provides that the HSW

SD CLS participant will receive 100 units per month of one-on-

one HSW SD CLS (Service Code H2015, with a unit being a 15-

minute increment), the funding in the associated budget for that

HSW SD CLS must be equal to or greater than $775/month (100

8

units x $7.75 minimum rate).  If an IPOS specifies 2-on-1 (or greater) CLS staffing in certain circumstances, then the budget shall be calculated, and CMHPSM shall pay, separately at the 1-on-1 rate for each staffer associated with the multiple staffing.

(b)     CMHPSM shall reimburse to the fiscal intermediary the amount determined by the approved budget (which shall be at least the amount determined by the CLS and OHSS Self-Determination Minimum Fee Schedules) for HSW SD CLS and HSW SD OHSS units, respectively, actually performed during the term of the IPOS.  Nothing in this provision shall prohibit CMHPSM from advancing funds to the fiscal intermediary in anticipation of such actual performance.

9.     Subject to the D1 Contingencies, MDHHS shall amend its contract with CMHPSM to require that a minimum fee schedule (the "OHSS Self-Determination Minimum Fee Schedule") likewise applies to self-directed HSW SD OHSS services, with the table entries for OHSS in effect from time to time being 70% of those for HSW SD CLS then in effect.

10.     MDHHS shall amend the Medicaid Provider Manual to reflect the content of Attachment A of the Agreement, titled "Costs Included in Community Living

Supports Code H2015," to the extent MDHHS determines that it does not already do so.

11.   Subject to the D1 Contingencies, and subject to the adjustments set forth in paragraph 16 hereof, the CLS and OHSS Self-Determination Minimum Fee Schedules and the associated funding for each of them described in paragraphs 8, 9, and 12 of this Order, shall be the totality of the funding provided to cover all costs for the HSW SD CLS participant's HSW SD CLS and HSW SD OHSS (*e.g.*, staff wages, transportation, employer costs, training, and activity fees).

12.   Subject to the D1 Contingencies, MDHHS shall increase the actuarially sound capitation rates for CMHPSM to account for the CLS and OHSS Self-Determination Minimum Fee Schedules.

(a)   The amount of this capitation rate increase will be at the sole discretion of MDHHS, but it will be subject to CMS's annual approval of the amended capitation rates as actuarially sound, as required by federal Medicaid law.

(b)   This requirement will be deemed satisfied when CMS approves, as actuarially sound, the capitation rates applicable to CMHPSM.

(c)   In addition, MDHHS shall ensure that the actuary employed by or under contract with MDHHS to certify annual capitation rates also certifies, at least annually, that the HSW CLS rate cell(s) of

MDHHS's capitation matrix for CMHPSM are not cross-subsidized by any other rate cell and are "actuarially sound," as that term is defined in 42 C.F.R. § 438.4.

13.   Contingent on CMHPSM signing a contract amendment(s) containing the relevant provision and CMS approving the contract amendment (the "D2 Contingencies" with respect to such amendment), MDHHS shall amend its contract with CMHPSM to require CMHPSM to offer new and existing beneficiaries who receive CLS services under the HSW (other than those previously terminated from self-determination) the choice to self-determine CLS services.  To the extent the D2 Contingencies have not been met by September 30, 2025 with respect to this requirement, MDHHS shall promptly commence, and diligently pursue to completion, the process of Adopting such provision as Policy.

14.   MDHHS shall instruct the Michigan Office of Administrative Hearings and Rules ("MOAHR") that it is MDHHS policy that, after the participant has exhausted the participant's internal appeal to the PIHP/CMHSP consistent with 42 C.F.R. §§ 438.402, 438.408(f):

(a)   Administrative Law Judges ("ALJs") in Medicaid Fair Hearings have the authority in hearings challenging the CLS and/or OHSS portions of an HSW SD CLS participant's self-determination budget:

(i)     To review HSW SD CLS participants' assertions that an insufficient number of units of HSW SD CLS or HSW SD OHSS was authorized and issue orders as specified in subparagraphs (b) and (c) below.  For the avoidance of doubt, the instruction to MOAHR set forth in this paragraph 14(a)(i) shall include that the scope of the ALJs' authority to review such assertions, and enter orders with respect thereto, includes an assertion by the HSW SD CLS participant regarding the proper allocation between HSW SD CLS and HSW SD OHSS, as those services are defined in the Medicaid Provider Manual; and

(ii)    To review the budget attached to an HSW SD CLS participant's IPOS and issue orders as specified in subparagraphs (b) and (c) below.

(b)    When reviewing the CLS and/or OHSS portions of an HSW SD CLS recipient's self-determination budget, or the number of units of HSW SD CLS or HSW SD OHSS that have been authorized, ALJs have authority to issue an order, if appropriate based on the proofs presented on the record at the hearing, to:

(i)     reverse the determination and require a specific budget or authorization as described in paragraph (c)(i) below, or

(ii)    reverse the determination and remand to the PIHP/ CMHPSM for further evidence or assessment as described in paragraph (c)(ii) below, or

(iii)   affirm the determination as described in paragraph (c)(iii) below.

(c)     Specifically,

(i)     If the ALJ concludes that the proofs presented on the record at the hearing establish that the PIHP/CMHSP's decision with respect to the HSW SD CLS and/or HSW SD OHSS portions of an HSW SD CLS participant's self-determination budget and/or the number of authorized units of HSW SD CLS or HSW SD OHSS was inconsistent with medical necessity as set forth in the Medicaid Provider Manual *and* that such proofs establish that a specific budget level or authorization requested by the participant is: (1) medically necessary, (2) otherwise consistent with state and federal law and policy, and (3) necessary to implement the IPOS, then the ALJ shall reverse

13

the determination and direct entry of the specific budget level or number of authorized units of HSW SD CLS or HSW SD OHSS requested by the participant.

(ii)   If the ALJ concludes that the proofs presented on the record at the hearing establish that the PIHP/CMHSP's decision with respect to the CLS and/or OHSS portions of an HSW SD CLS participant's self-determination budget and/or the number of authorized units of HSW SD CLS or HSW SD OHSS was inconsistent with medical necessity as set forth in the Medicaid Provider Manual but that such proofs do not establish that a specific budget level or number of authorized units is (1) medically necessary, (2) otherwise consistent with state or federal law and policy, and (3) necessary to implement the IPOS, then the ALJ shall reverse the determination and remand to the PIHP/CMHSP for reconsideration based on the ALJ's findings and order, specifying to the extent reasonably possible the parameters of such reconsideration.

(iii)   If the ALJ concludes that the proofs presented on the record at the hearing do not establish that the

14

PIHP/CMHSP's decision was inconsistent with medical necessity as set forth in the Medicaid Provider Manual or otherwise inconsistent with state or federal law or policy, then the ALJ shall uphold the determination.

(d)     ALJs in Medicaid Fair Hearings have the authority to review PIHPs'/CMHSPs' decisions to terminate a self-determination arrangement.

    (i)     In such a Medicaid Fair Hearing, if the ALJ determines that the evidence presented on the record at the hearing does not establish that there was good cause to terminate the self-determination arrangement, then the ALJ will reverse the PIHP/CMHSP's decision to terminate the self-determination arrangement and direct the continuation of such arrangement, rather than remand to the PIHP/CMHSP for reconsideration.

    (ii)    The requirement in paragraph 14(d)(i) shall be implemented as Policy notwithstanding any provision of existing MDHHS Policy or guidance stating that termination of self-determination is not the subject of a Medicaid Fair Hearing.

(e)     MDHHS shall supply to counsel for Plaintiffs a copy of the instruction to MOAHR required by this paragraph 14.

(f)     Notwithstanding such instruction to MOAHR, MDHHS may reserve to itself, as opposed to the ALJ, the final decision as to the authorized budget, the service authorization level, or the termination of self-determination arrangements, *provided, however*, that the ultimate determination be made within the timeframe for "final administrative action" as set forth in 42 C.F.R. § 431.244(f).

15.    MDHHS shall:

(a)     Amend the Medicaid Provider Manual to reflect the content of Attachment B of the Agreement, to the extent MDHHS determines that it does not already do so.

(b)     Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) discuss with the HSW SD CLS participant during the person-centered planning process various components of CLS, such as transportation, activities, staff wages, employer costs, training time, and similar topics, as well as, if relevant, the amount, scope, and frequency of each such component that may be medically necessary for the participant, as defined by Attachment B to the Agreement.

(c)     Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) ensure that the fiscal intermediary does not make a final determination on the amount, scope, or duration of services and that the PIHP (or its CMHSP subcontractor) does not delegate any aspect of creating the budget to fiscal intermediary personnel.

(d)     Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) notify in writing any HSW SD CLS participant whose self-determination arrangement is at risk of termination that such risk exists.

   (i)     The notice shall specify in such detail as is reasonably practicable the issues that have led to the risk of termination, and shall provide opportunities for meaningful problem solving that involve the HSW SD CLS participant.

   (ii)    If, notwithstanding the problem-solving efforts, the PIHP (or the CMHSP as its subcontractor) believes that termination is necessary, then it shall issue an **Advance Action Notice**, with appeal rights consistent with those provided in 42 C.F.R. § 438.400 *et seq*.

17

(e)    Subject to the D2 Contingencies, amend the Contract with CMHPSM to add a new sentence to paragraph 1(Q) (General Requirements in Schedule A – Statement of Work) to read: "The Contractor shall comply with any decision issued by an Administrative Law Judge in a Medicaid Fair Hearing."

(f)    Subject to the D2 Contingencies, amend the contract with CMHPSM to require that, when CMHPSM reduces an HSW SD CLS participant's self-determination budget at an annual renewal or otherwise, CMHPSM provide, in writing, a specific justification for the reduction, which shall explain why CMHPSM believes the participant does not need the same amount, duration, and scope of HSW services that the participant was previously assessed to need.  To the extent the D2 Contingencies have not been met by September 30, 2025 with respect to this requirement, MDHHS shall promptly commence, and diligently pursue to completion, the process of Adopting such provision as Policy.  For the avoidance of doubt:

    (i)    A budget reduction or termination during the term of an IPOS shall be treated as a "reduction, suspension, or termination" for purposes of internal appeal and Fair

Hearing rules (including advance Adverse Benefit Determination notice and continuation of benefits, when applicable), and

(ii) A budget reduction or termination at annual renewal shall be treated as a denial of a requested service, but CMHPSM shall, in the absence of exigent circumstances, provide the written justification required herein as soon as practicable and, in any event, no later than 14 days before the PCP meeting for the renewal.

(g) Subject to the D2 Contingencies, amend the contract with CMHPSM to require that, when WCCMH does not approve, or approves a limited authorization of, a request for inclusion in the IPOS of: (i) a service, or (ii) one or more specific aspects of the amount, scope, or duration of a service, CMHPSM shall ensure that:

(i) the item is listed in a separate section of the IPOS titled "Requests Not Approved," and

(ii) WCCMH provides an adverse benefit determination that briefly but concretely sets forth its reasoning for not approving the request.

The requirements in this paragraph 15(g) shall apply regardless of whether the non-approval or limited approval takes place during the person-centered planning process or after its conclusion.  To the extent the D2 Contingencies have not been met by September 30, 2025 with respect to this paragraph 15(g), MDHHS shall promptly commence, and diligently pursue to completion, the process of Adopting such provision as Policy.

16.     Effective for the rates applicable to SFY 2026 (beginning October 1, 2025) and thereafter, the rates in the CLS Self-Determination Minimum Fee Schedule in each fiscal year, if the CLS Self-Determination Minimum Fee Schedule is in effect as required herein, shall be the rate set forth in Table 1 in paragraph 8 hereof (the "Base Rates") adjusted by the cumulative percentage change in the nationwide Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) for the period beginning March 31, 2024 and ending on the March 31 preceding the start of the fiscal year in question (that is, the rates for SFY 2027 shall be the Base Rates adjusted by the percentage change in the CPI-W from March 31, 2024 to March 31, 2026), provided, however, that the rates in the CLS Self-Determination Minimum Fee Schedule in any fiscal year, shall not be less than the Base Rates set forth in Table 1. For example:

- If the CPI-W increases by 3 percent from March 31, 2024 to March 31, 2025, the rates applicable for SFY 2026 shall be the Base Rates increased by 3 percent.

- If the CPI-W decreases by 3 percent from March 31, 2024 to March 31, 2025, the rates applicable for SFY 2026 shall be the Base Rates without any adjustment.

- If the CPI-W increases by 5 percent from March 31, 2024 to March 31, 2026, the rates applicable for SFY 2027 shall be the Base Rates increased by 5 percent.

17. ***Providing Non-Binding Guidance***

(a)   MDHHS shall provide to PIHPs and CMHSPs non-binding guidance containing examples illustrating the operation of the contract and Policy amendments effected hereby that MDHHS, in its sole discretion, deems appropriate.

(b)   If Attachment C of the Agreement takes effect, then no later than 90 days after it does so, MDHHS shall provide to PIHPs and CMHSPs non-binding guidance containing examples illustrating the operation of Attachment C of the Agreement that MDHHS, in its sole discretion, deems appropriate.

(c) MDHHS shall consult with counsel for Plaintiffs concerning such non-binding guidance, but the form and content thereof remain in MDHHS's sole discretion.

18. MDHHS shall request from the Michigan legislature that an appropriation to fund the CLS and OHSS Self-Determination Minimum Fee Schedules be included in the ongoing and base part of MDHHS's budget, rather than included as a one-time appropriation.

19. MDHHS will provide Plaintiffs an opportunity to comment on MDHHS's draft applications to CMS for approval of any applicable state plan amendments, waiver amendments, or state-directed payments required to implement the Settlement Agreement, and MDHHS will consider Plaintiffs' comments.

20. All of the requirements herein except the Minimum Fee Schedule Provisions shall become effective on March 2, 2025, and all requirements herein shall remain in effect thereafter until the Sunset Date described in paragraph 25 below, at which point all provisions of this Order shall no longer be enforceable and the obligations herein shall cease to exist, except for the provisions of paragraph 27 of this Order.

(a) To the extent that some of the requirements herein (for example, contract amendments and Medicaid Provider Manual modifications) are not completed by until after March 2, 2025, MDHHS will not be deemed in violation of this Order so long as it

22

continues to make diligent, good faith efforts to finalize what is required to implement these requirements.

21. On the date 10 calendar days after Director Hertel or her successor certifies to Plaintiffs and the Court that all of the D1 Contingencies have been met:

    (a)    the Minimum Fee Schedule Provisions of this Order (*i.e.*, paragraphs 8, 9, 11, 12, and 16 hereof) shall become operative, and

    (b)    the interim funding for Plaintiffs Derek Waskul, Kevin Wiesner, Cory Schneider, and Hannah Ernst under paragraph 6 above shall be terminated and shall be supplanted by such Minimum Fee Schedule Provisions.

22. MDHHS shall make good faith efforts to satisfy the D1 Contingencies as promptly as reasonably practicable given the nature of the Contingencies.

    (a)    If any such D1 Contingencies have not been met by June 1, 2025 (the "Drop Dead Date"), and there has not by that time been express written consent of all Parties to an extension of the Drop Dead Date, then the Minimum Fee Schedule Provisions of the Settlement Agreement shall not come into effect.

    (b)    Notwithstanding subparagraph (a) above, if the only uncompleted Contingencies as of the Drop Dead Date are PIHP contract amendments, CMS approvals thereof, and/or CMS approvals of

the new capitated rates, then the Drop Dead Date shall be deemed extended by six months as to those uncompleted amendments and approvals only.

23.    If the Minimum Fee Schedule Provisions of this Order have not come into effect by the date that is 30 days before the Drop Dead Date, MDHHS shall at that time begin, and shall complete by 120 days after the Drop Dead Date or, if applicable, the extended Drop Dead Date, the process for making amendments to the Medicaid Provider Manual that are necessary to reflect the contents of Attachment C of the Agreement.

24.    Sixty (60) days after the Drop Dead Date, or, if applicable, the extended Drop Dead Date, the obligation of MDHHS to make the payments to or on behalf of the individual Plaintiffs as described in paragraph 6 hereof shall expire.

25.    On September 30, 2029 (the "Sunset Date"), all provisions of this Order shall expire, except for paragraph 27 hereof.

    (a)    In anticipation of such expiration, MDHHS shall begin no later than April 1, 2029, and shall complete before June 30, 2029, the process for making amendments to the Medicaid Provider Manual to reflect the content of Attachment C of the Agreement.

    (b)    Any motion to enforce MDHHS's obligation to promulgate the amendments described in the foregoing paragraph 25(a) shall not

be subject to the informal consultation obligations of paragraph 26(a)(i) of this Order and shall be filed before the Sunset Date.  Such motion shall remain within the Court's jurisdiction, including after the Sunset Date as described in paragraph 25(c)(i) below.

(c)　　Upon the Sunset Date, excepting only paragraphs 27 below and 25(b) above, all provisions of this Order shall no longer be enforceable against MDHHS, and the obligations of MDHHS herein shall cease to exist.

    (i)　　Upon the later of the Sunset Date or, if a motion is filed pursuant to paragraph 25(b) above then 90 days after the entry of a court order that fully adjudicates such a motion, the Action may, upon motion, be dismissed as against MDHHS.

    (ii)　　Such dismissal as against MDHHS shall be with prejudice as to any claims accruing prior to the Sunset Date and without prejudice as to any claims accruing thereafter.

    (iii)　　Upon such dismissal, the Court's continuing jurisdiction over the Settlement Agreement shall cease.

(iv)   Neither such dismissal, nor the expiration of MDHHS's

obligations under this Order, shall by itself effect the

modification or vacatur of any policies, guidance, or

other actions implemented by MDHHS pursuant hereto,

but such policies, guidance, or other actions shall upon

such expiration and dismissal be subject to ordinary regu-

latory processes of amendment, vacatur, or modification.

26.   ***Enforcement; Limitation of Remedy Against MDHHS and Preservation of***
***Rights and Remedies Against Local Defendants.***

(a)   Enforcement of this Order shall be sought by motion in this Ac-

tion (to which the stay in this Order shall not apply) and shall be

subject to the following procedures:

(i)   No less than 30 days prior to filing any motion related to

enforcement of this Order, the moving Party shall notify

the non-moving Party of the alleged noncompliance and

request a meeting for the purpose of attempting to resolve

the alleged noncompliance.

(ii)   If the Parties fail to resolve the allegation of noncompli-

ance raised in the informal consultation described in

paragraph 26(a)(i), either Party may file a motion with the Court seeking a judicial determination on the issue.

(iii)   Motions relating to alleged noncompliance will not seek to hold MDHHS in criminal contempt of court.

(iv)   Motions relating to alleged noncompliance will not seek to hold MDHHS in civil contempt of court except based on an allegation of MDHHS's willful noncompliance with a previous order of enforcement on the same subject matter.  If Plaintiffs do bring a motion to hold MDHHS in civil contempt of court under the limitations in this paragraph, the Court may hold MDHHS in civil contempt of court only if the Court makes a finding of MDHHS's willful noncompliance with a previous order of enforcement on the same subject matter.  Nothing in this paragraph shall preclude Plaintiffs from seeking attorneys' fees and costs on a motion to enforce, whether under 42 U.S.C. § 1988 or otherwise.

(b)   During any time for which MDHHS is required by this Order to place the contents of Attachment C of the Agreement in the Medicaid Provider Manual, any enforcement actions brought by

27

Plaintiffs against MDHHS related to "costing out" of an HSW SD

CLS and/or HSW SD OHSS budget, or the sufficiency of such

budget to implement the IPOS, are limited to whether MDHHS

complied with the requirements of this Order to place the contents

of Attachment C of the Agreement in the Medicaid Provider Man-

ual.

(c)     Plaintiffs' forbearance of enforcement directly against MDHHS in

subparagraph  (b) shall not limit the right of Plaintiffs to seek en-

forcement of Attachment C of the Agreement, including without

limitation the costing out and sufficiency provisions thereof,

against WCCMH or CMHPSM.

(d)     Nothing herein shall prevent Plaintiffs from continuing to prose-

cute the Action against CMHPSM and/or WCCMH, and nothing herein

shall limit the relief Plaintiffs may seek against those Defendants.

27.     ***Merger of Claims into This Order***

(a)     On March 3, 2025 (the "Merger Date"), but effective as of De-

cember 11, 2024, all claims that Plaintiffs brought or could have

brought against MDHHS in this Action shall be extinguished as

separate claims and shall merge into this Order.

(b)  From and after the Merger Date, Plaintiffs shall have no further recourse against MDHHS in respect of such merged and extinguished claims except pursuant to the terms hereof.

(c)  The claims compromised, settled, and resolved by the Agreement, and merged into and extinguished by this Order pursuant to sub-paragraph (a) above, include all claims that were raised in the Complaint or Amended Complaint, and all claims that could have been raised in the Complaint or Amended Complaint, on behalf of all Plaintiffs.  As of the Merger Date, in consideration of the obligations contained herein, and the benefits provided or to be provided, the Settlement Agreement and this Order shall fully resolve, extinguish, and finally and forever bar, and the Plaintiffs hereby give up, all claims described in this paragraph 27.

(d)  The extinguishment of such claims, and/or their merger into this Order, shall be limited to MDHHS and shall not preclude claims against any other person or entity, including without limitation WCCMH and/or CMHPSM.

(e)  Nothing herein shall preclude a Plaintiff from asserting in a Fair Hearing that the authorized CLS units are insufficient to meet that Plaintiff's needs.

(f)     Nothing herein shall preclude a Plaintiff from asserting claims

against MDHHS that accrue after the Sunset Date in a new law-

suit.

**IT IS SO ORDERED:**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: January 27, 2025

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| Derek Waskul, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 16-cv-10936 |
| | ) | |
| Washtenaw County Community | ) | |
| Mental Health, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SETTLEMENT AGREEMENT**

This Settlement Agreement is entered into by Defendants Michigan Department of Health and Human Services and Elizabeth Hertel, in her official capacity as Director of the Michigan Department of Health and Human Services (hereafter collectively referred to as "DHHS"); and Plaintiffs Derek Waskul (guardian Cynthia Waskul), Cory Schneider (guardians Martha Schneider and Wendy Schneider), Kevin Wiesner (guardian Patrick Wiesner), Hannah Ernst (guardian Susan Ernst), and Washtenaw Association for Community Advocacy ("WACA") (hereafter "Plaintiffs").

1

# WITNESSETH:

**WHEREAS,** on March 15, 2016, and February 11, 2019, Plaintiffs filed their Complaint and Amended Complaint, respectively, in the captioned proceeding (the "Action") in the United States District Court for the Eastern District of Michigan, and

**WHEREAS,** the Complaint and Amended Complaint allege a number of violations of state and federal law arising out of the operation of the Habilitation Supports Waiver in Washtenaw County, Michigan, and

**WHEREAS,** DHHS denies these claims, and,

**WHEREAS,** the Parties mutually desire to resolve Plaintiffs' claims against DHHS without the need for further litigation, and without any admission of liability by any party.

**NOW, THEREFORE,** the Parties hereby enter into this Settlement Agreement to compromise, settle, and resolve all of the claims asserted by Plaintiffs against DHHS on the following terms and conditions:

**A.    Retention of Jurisdiction; Enforcement; Interim Payments to Plaintiffs Waskul, Wiesner, Schneider, and Ernst**

1) This Settlement Agreement is subject to approval by the Court, and the terms hereof shall be incorporated in the order of approval.

   a) The Plaintiffs shall file a Motion for Approval, which may include requests for related relief against WCCMH and CMHPSM, no later than 30 days after execution hereof.

   b) DHHS shall join in the request for approval but need not join in Plaintiffs' specific arguments or the request for additional relief and may file its own papers in support of approval. The Parties shall coordinate their filings to the extent feasible.

   c) If the Court does not approve the Settlement Agreement, the Parties shall work in good faith to make modifications to address the Court's concerns, *provided* that no Party is obligated to agree to anything not already agreed-to herein.

3

d)  If the Parties are unable to obtain approval from the Court despite good faith efforts, this Settlement Agreement shall become null and void.

2)  ***Stay of Action***:

a)  The Parties shall further request that the Action as a whole be stayed pending the Court's approval of this Settlement Agreement, which stay shall continue as between Plaintiffs and DHHS (except as set forth in Section A(4) below) until the Sunset Date set out in Section E(6) below.

b)  Following the Merger Date set forth in Section G(1) below, the provisions of Section G shall govern as between the Plaintiffs and DHHS, but Plaintiffs shall be free to seek the lifting of the stay vis-à-vis WCCMH and CMHPSM, so that Plaintiffs may pursue their claims against those Defendants.

3)  The Court's order of approval shall specify that the Court retains jurisdiction of this Action for purposes of enforcing this

4

Settlement Agreement until the Sunset Date described in Section E.

4) Enforcement of this Settlement Agreement shall be sought by motion in this Action (to which the stay in Section A(2)(a) shall not apply) and shall be subject to the following procedures:

a) No less than 30 days prior to filing any motion related to enforcement of this Settlement Agreement, the moving Party shall notify the non-moving Party of the alleged noncompliance and request a meeting for the purpose of attempting to resolve the alleged noncompliance.

b) If the Parties fail to resolve the allegation of noncompliance raised in the informal consultation described in Section A(4)(a), either Party may file a motion with the Court seeking a judicial determination on the issue.

c) Motions relating to alleged noncompliance will not seek to hold DHHS in criminal contempt of court.

d) Motions relating to alleged noncompliance will not seek to hold DHHS in civil contempt of court except based on

5

an allegation of DHHS's willful noncompliance with a previous order of enforcement on the same subject matter. If Plaintiffs do bring a motion to hold DHHS in civil contempt of court under the limitations in this Section A(4)(d), the Court may only hold DHHS in civil contempt of court if the Court makes a finding of DHHS's willful noncompliance with a previous order of enforcement on the same subject matter. Nothing in this Section A(4)(d) shall preclude Plaintiffs from seeking attorneys' fees and costs on a motion to enforce, whether under 42 U.S.C. § 1988 or otherwise.

e)   For so long as the Minimum Fee Schedule Provisions hereof are in effect, Plaintiffs shall not bring enforcement actions against DHHS alleging that Plaintiffs' IPOSs need to be "costed out" to create an HSW SD CLS and/or HSW SD OHSS budget, or that a budget created in accordance with Sections C(2) and C(3) is not sufficient to implement the IPOS.

f) During any time for which DHHS is required by this Settlement Agreement to place the contents of Attachment C in the Medicaid Provider Manual, any enforcement actions brought by Plaintiffs against DHHS related to "costing out" of an HSW SD CLS and/or HSW SD OHSS budget, or the sufficiency of such budget to implement the IPOS, are limited to whether DHHS complied with the requirements in this Settlement Agreement to place the contents of Attachment C in the Medicaid Provider Manual. For the avoidance of doubt, Plaintiffs' forbearance of enforcement directly against DHHS in this Section A(4)(f) shall not limit the right of Plaintiffs to seek enforcement of Attachment C, including without limitation the costing out and sufficiency provisions thereof, against WCCMH or CMHPSM.

5) As soon as practicable after execution of this Settlement Agreement, but no later than 60 days after such execution, and without regard to any of the Contingencies set forth in Section D, DHHS shall cause Plaintiffs Derek Waskul, Kevin

7

Wiesner, Cory Schneider, and Hannah Ernst to have available going forward, through their Fiscal Intermediaries, funding for their HSW SD CLS and HSW SD OHSS budgets (including such changes in authorized hours as may be effected from time to time) at $31 per hour for HSW SD CLS and $21.70 per hour for HSW SD OHSS.

a) Such funding shall be revocable only in the circumstances described in Sections E(2) and E(5) below or if the Court does not approve this Settlement Agreement, and the funding shall in any event not be subject to recoupment on any basis other than for hours not yet expended.

b) The interim payments shall be treated as made in partial settlement of disputed claims in this Action and are separate and apart from any other terms of this Settlement Agreement.

## B.   Definitions

1) The Action: Case No. 2:16-cv-10936-PDB-EAS in the United States District Court for the Eastern District of Michigan.

8

2)   "Amendment," or "amend," in the context of amendments to the contract between DHHS and CMHPSM, includes: (1) amending an existing contract during a fiscal year to include the relevant terms, or (2) executing a new contract or contract renewal in advance of a new fiscal year that includes the relevant terms.

3)   The Centers for Medicare & Medicaid Services ("CMS"): the agency within the U.S. Department of Health and Human Services that administers the Medicaid program.

4)   "CLS" means the Community Living Supports service.

5)   "CLS Self-Determination Minimum Fee Schedule" refers to the minimum fee schedule described herein for HSW SD CLS.

6)   "CMHSP" is a Community Mental Health Services Program, as that term is defined in M.C.L. 330.1100a(18).

7)   The Defendants: DHHS (as defined in the preamble); Community Mental Health Partnership of Southeast Michigan ("CMHPSM"); and Washtenaw County Community Mental Health ("WCCMH").

8)   The Plaintiffs: as set forth in the preamble.

9

9) The Parties: the Plaintiffs and DHHS. Only the Plaintiffs and DHHS are parties to this Settlement Agreement.

10) Habilitation Supports Waiver ("HSW"): the Medicaid program of home-and-community-based services administered by DHHS pursuant to Section 1915(c) of the Social Security Act, the terms of which are in a waiver document filed with and approved by CMS.

  a) The current Habilitation Supports Waiver expires on September 30, 2024. The terms "Habilitation Supports Waiver" and "HSW" in this Settlement Agreement encompass any renewals or modifications of the current waiver in effect before the Sunset Date (as defined in Section E(6)) unless DHHS demonstrates, on a fact-based motion that shall, as appropriate, be subject to discovery in aid of its resolution, that such renewal or modification fundamentally changes the overall concept of Self-Determination CLS services that are the subject matter of the Action.

10

b)   DHHS represents that, as of the date this Settlement Agreement is executed, no such fundamental change is contemplated.

11)   Prepaid Inpatient Health Plans ("PIHPs"): the Prepaid Inpatient Health Plans responsible for managing and paying claims for HSW services and other services pursuant to a managed care contract with DHHS. There are 10 Prepaid Inpatient Health Plans: Community Mental Health Partnership of Southeast Michigan; Detroit Wayne Integrated Health Network; Lakeshore Regional Entity; Macomb County Mental Health Services; Mid-State Health Network; NorthCare Network; Northern Michigan Regional Entity; Oakland Community Health Network; Region 10 PIHP; and Southwest Michigan Behavioral Health.

12)   HSW Self-Determination Community Living Supports ("HSW SD CLS"): Community Living Supports covered through and defined by the Habilitation Supports Waiver document filed with and approved by CMS and provided via a self-determination arrangement. This term does not include CLS that is

11

not covered through the Habilitation Supports Waiver, nor does it include CLS covered through the Habilitation Supports Waiver provided via any arrangement other than a self-determination arrangement (for example, an agency arrangement).

13) HSW Self-Determination Overnight Health and Safety Supports ("HSW SD OHSS"). Overnight Health and Safety Supports covered through and defined by the Habilitation Supports Waiver document filed with and approved by CMS and provided via a self-determination arrangement. This term does not include OHSS that is not covered through the Habilitation Supports Waiver, nor does it include OHSS covered through the Habilitation Supports Waiver provided via any arrangement other than a self-determination arrangement (for example, an agency arrangement).

14) "IPOS" means the Individual Plan of Service.

15) The "Minimum Fee Schedule Provisions" of this Settlement Agreement are Sections C(2), C(3), C(5), C(6), and C(10) below.

12

16)   "OHSS Self-Determination Minimum Fee Schedule" refers to the minimum fee schedule described herein for HSW SD OHSS.

17)   "Policy," when referring to DHHS, means the Medicaid Provider Manual.

18)   "Self Determination" includes both (1) participant direction of services as described in Appendix E of the HSW, and (2) "self direction" as that term is used in DHHS's Self-Direction Technical Requirements.

## C.   Terms

1)   The Minimum Fee Schedule Provisions are subject to the Contingencies described in Section D(1). DHHS is not required to implement the Minimum Fee Schedule Provisions unless and until all such Contingencies are satisfied.

2)   Subject to the contingencies described in Section D(1), DHHS shall amend its contract with CMHPSM so that:

a)   For each HSW SD CLS participant, the self-determination budget created jointly by CMHSPM (or a subcontractor to which CMHPSM delegates this function) and the

13

participant pursuant to Appendix E of the HSW shall provide for no less than the amounts set forth in the CLS Self-Determination Minimum Fee Schedule (Table 1) below (as adjusted pursuant to Section C(10)) for each authorized unit of HSW SD CLS in the participant's IPOS.

| Table 1 | |
| --- | --- |
| Service code | Unit (.25 hour) rate per participant |
| H2015 | $7.75 |
| H2015UN (2 participants) | $3.87 |
| H2015UP (3 participants) | $2.59 |
| H2015UQ (4 participants) | $1.94 |
| H2015UR (5 participants) | $1.56 |
| H2015US (6+ participants) | $1.10 |

This means, for example, that if an IPOS provides that the HSW SD CLS participant will receive 100 units per month of one-on-one HSW SD CLS (Service Code H2015, with a unit being a 15-minute increment), the funding in the associated budget for that HSW SD CLS must be equal to or greater than $775/month (100 units x $7.75 minimum rate). For the avoidance of doubt, it is

understood and agreed that if an IPOS specifies 2-on-1 (or greater) CLS staffing in certain circumstances, then the budget shall be calculated, and CMHPSM shall pay, separately at the 1-on-1 rate for each staffer associated with the multiple staffing.

b) CMHPSM shall reimburse to the fiscal intermediary the amount determined by the approved budget (which shall be at least the amount determined by the CLS and OHSS Self-Determination Minimum Fee Schedules) for HSW SD CLS and HSW SD OHSS units, respectively, actually performed during the term of the IPOS. Nothing in this Section C(2)(b) shall prohibit CMHPSM from advancing funds to the fiscal intermediary in anticipation of such actual performance.

3) Subject to the contingencies in Section D(1), DHHS shall amend its contract with CMHPSM to require that a minimum fee schedule (the "OHSS Self-Determination Minimum Fee Schedule") likewise apply to self-directed HSW SD OHSS

services, with the table entries for OHSS in effect from time to time being 70% of those for HSW SD CLS then in effect.

4)  DHHS shall amend the Medicaid Provider Manual to reflect the content of Attachment A, titled "Costs Included in Community Living Supports Code H2015," to the extent DHHS determines that it does not already do so.

5)  Subject to the contingencies in Section D(1), and subject to the adjustments set forth in Section C(10) below, the CLS and OHSS Self-Determination Minimum Fee Schedules and the associated funding for each of them described in Sections C(2), C(3), and C(6), shall be the totality of the funding provided to cover all costs for the HSW SD CLS participant's HSW SD CLS and HSW SD OHSS (*e.g.,* staff wages, transportation, employer costs, training, and activity fees).

6)  Subject to the contingencies in Section D(1), DHHS shall increase the actuarially sound capitation rates for CMHPSM to account for the CLS and OHSS Self-Determination Minimum Fee Schedules.

16

a)   The amount of this capitation rate increase will be at the sole discretion of DHHS, but it will be subject to CMS's annual approval of the amended capitation rates as actuarially sound, as required by federal Medicaid law.

b)   The requirements of this Section C(6) will be deemed satisfied when CMS approves, as actuarially sound, the capitation rates applicable to CMHPSM.

c)   In addition, DHHS shall ensure that the actuary employed by or under contract with DHHS to certify annual capitation rates also certifies, at least annually, that the HSW CLS rate cell(s) of DHHS's capitation matrix for CMHPSM are not cross-subsidized by any other rate cell and are "actuarially sound," as that term is defined in 42 C.F.R. § 438.4.

7)   Subject to the Contingencies described in Section D(2), DHHS shall amend its contract with CMHPSM to require CMHPSM to offer new and existing beneficiaries who receive CLS services under the HSW (other than those previously terminated from self-determination) the choice to self-determine CLS

17

services. To the extent the Contingencies described in Section D(2) have not been met by September 30, 2025 with respect to this Section C(7), DHHS shall promptly commence, and diligently pursue to completion, the process of adopting such provision as Policy.

8) DHHS shall instruct the Michigan Office of Administrative Hearings and Rules ("MOAHR") that it is DHHS policy that, after the participant has exhausted the participant's internal appeal to the PIHP/CMHSP consistent with 42 C.F.R. §§ 438.402, 438.408(f):

a) Administrative Law Judges ("ALJs") in Medicaid Fair Hearings have the authority in hearings challenging the CLS and/or OHSS portions of an HSW SD CLS participant's self-determination budget:

i) To review HSW SD CLS participants' assertions that an insufficient number of units of HSW SD CLS or HSW SD OHSS was authorized and issue orders, as specified in Sections C(8)(b) and C(8)(c) below. For the avoidance of doubt, this includes an assertion by

18

the HSW SD CLS participant regarding the proper allocation between HSW SD CLS and HSW SD OHSS, as those services are defined in the Medicaid Provider Manual; and

ii)  To review the budget attached to an HSW SD CLS participant's IPOS and issue orders, as specified in Sections C(8)(b) and C(8)(c) below.

b)  When reviewing the CLS and/or OHSS portions of an HSW SD CLS recipient's self-determination budget, or the number of units of HSW SD CLS or HSW SD OHSS that have been authorized, ALJs have authority to issue an order, if appropriate based on the proofs presented on the record at the hearing, to:

i)  reverse the determination and require a specific budget or authorization as described in paragraph (c)(i) below, *or*

ii)  reverse the determination and remand to the PIHP/ CMHPSM for further evidence or assessment as described in paragraph (c)(ii) below, *or*

19

iii)   affirm the determination as described in paragraph (c)(iii) below.

c)   Specifically,

i)   If the ALJ concludes that the proofs presented on the record at the hearing establish that the PIHP/ CMHSP's decision with respect to the HSW SD CLS and/or HSW SD OHSS portions of an HSW SD CLS participant's self-determination budget and/or the number of authorized units of HSW SD CLS or HSW SD OHSS was inconsistent with medical necessity as set forth in the Medicaid Provider Manual *and* that such proofs establish that a specific budget level or authorization requested by the participant is: (1) medically necessary, (2) otherwise consistent with state and federal law and policy, and (3) necessary to implement the IPOS, then the ALJ shall reverse the determination and direct entry of the specific budget level or number of authorized units of HSW SD CLS or HSW SD OHSS requested by the participant.

20

ii)   If the ALJ concludes that the proofs presented on the record at the hearing establish that the PIHP/ CMHSP's decision with respect to the CLS and/or OHSS portions of an HSW SD CLS participant's self-determination budget and/or the number of authorized units of HSW SD CLS or HSW SD OHSS was inconsistent with medical necessity as set forth in the Medicaid Provider Manual but that such proofs do not establish that a specific budget level or number of authorized units is (1) medically necessary, (2) otherwise consistent with state or federal law and policy, and (3) necessary to implement the IPOS, then the ALJ shall reverse the determination and remand to the PIHP/CMHSP for reconsideration based on the ALJ's findings and order, specifying to the extent reasonably possible the parameters of such reconsideration.

iii)   If the ALJ concludes that the proofs presented on the record at the hearing do not establish that the PIHP/

CMHSP's decision was inconsistent with medical necessity as set forth in the Medicaid Provider Manual or otherwise inconsistent with state or federal law or policy, then the ALJ shall uphold the determination.

d) ALJs in Medicaid Fair Hearings have the authority to review PIHPs'/CMHSPs' decisions to terminate a self-determination arrangement.

   i) In such a Medicaid Fair Hearing, if the ALJ determines that the evidence presented on the record at the hearing does not establish that there was good cause to terminate the self-determination arrangement, then the ALJ will reverse the PIHP/CMHSP's decision to terminate the self-determination arrangement and direct the continuation of such arrangement, rather than remand to the PIHP/CMHSP for reconsideration.

   ii) This Section C(8)(d) shall be implemented as Policy notwithstanding any provision of existing DHHS Policy or guidance stating that termination of self-

22

determination is not the subject of a Medicaid Fair Hearing.

e) DHHS shall supply to counsel for Plaintiffs a copy of the instruction to MOAHR required by this Section C(8).

f) Notwithstanding such instruction to MOAHR, DHHS may reserve to itself, as opposed to the ALJ, the final decision as to the authorized budget, the service authorization level, or the termination of self-determination arrangements, *provided*, *however*, that the ultimate determination be made within the timeframe for "final administrative action" as set forth in 42 C.F.R. § 431.244(f).

9) DHHS shall:

a) Amend the Medicaid Provider Manual to reflect the content of Attachment B, to the extent DHHS determines that it does not already do so.

b) Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) discuss with the HSW SD CLS participant during the person-centered planning process various components of CLS, such as

23

transportation, activities, staff wages, employer costs, training time, and similar topics, as well as, if relevant, the amount, scope, and frequency of each such component that may be medically necessary for the participant, as defined by Attachment B.

c)   Amend the Medicaid Provider Manual to require that PIHPs (or CMHSPs acting on their behalf) ensure that the fiscal intermediary does not make a final determination on the amount, scope, or duration of services and that the PIHP (or its CMHSP subcontractor) does not delegate any aspect of creating the budget to fiscal intermediary personnel.

d)   Amend the Medicaid Provider Manual to require a PIHP (or a CMHSP acting on a PIHP's behalf) to notify in writing any HSW SD CLS participant whose self-determination arrangement is at risk of termination that such risk exists.

i)   The notice shall specify in such detail as is reasonably practicable the issues that have led to the risk of

24

termination, and shall provide opportunities for meaningful problem solving that involve the HSW SD CLS participant.

ii)   If, notwithstanding the problem-solving efforts, the PIHP (or the CMHSP as its subcontractor) believes that termination is necessary, then it shall issue an **Advance Action Notice**, with appeal rights consistent with those provided in 42 C.F.R. § 438.400 *et seq*.

e)   Subject to the Contingencies described in Section D(2), amend the Contract with CMHPSM to add a new sentence to paragraph 1(Q) (General Requirements in Schedule A – Statement of Work) to read: "c. The Contractor shall comply with any decision issued by an Administrative Law Judge in a Medicaid Fair Hearing."

f)   Subject to the Contingencies described in Section D(2), amend the contract with CMHPSM to require that, when CMHPSM reduces an HSW SD CLS participant's self-determination budget at an annual renewal or otherwise,

25

CMHPSM provide, in writing, a specific justification for the reduction, which shall explain why CMHPSM believes the participant does not need the same amount, duration, and scope of HSW services that the participant was previously assessed to need. To the extent the Contingencies described in Section D(2) have not been met by September 30, 2025 with respect to this Section C(9)(f), DHHS shall promptly commence, and diligently pursue to completion, the process of adopting such provision as Policy. For the avoidance of doubt:

i) A budget reduction or termination during the term of an IPOS shall be treated as a "reduction, suspension, or termination" for purposes of internal appeal and Fair Hearing rules (including advance Adverse Benefit Determination notice and continuation of benefits, when applicable), and

ii) A budget reduction or termination at annual renewal shall be treated as a denial of a requested service, but CMHPSM shall, in the absence of exigent

26

circumstances, provide the written justification required by this Section C(9)(f) as soon as practicable and, in any event, no later than 14 days before the PCP meeting for the renewal.

g) Subject to the Contingencies described in Section D(2), amend the contract with CMHPSM to require that, when WCCMH does not approve, or approves a limited authorization of, a request for inclusion in the IPOS of: (i) a service, or (ii) one or more specific aspects of the amount, scope, or duration of a service, CMHPSM shall ensure that:

   i) the item is listed in a separate section of the IPOS titled "Requests Not Approved," and

   ii) WCCMH provides an adverse benefit determination that briefly but concretely sets forth its reasoning for not approving the request.

This Section C(9)(g) shall apply regardless of whether the non-approval or limited approval takes place during the person-centered planning process or after its

27

conclusion. To the extent the Contingencies described in Section D(2) have not been met by September 30, 2025 with respect to this Section C(9)(g), DHHS shall promptly commence, and diligently pursue to completion, the process of adopting such provision as Policy.

10) Effective for the rates applicable to SFY 2026 (beginning October 1, 2025) and thereafter, the rates in the CLS Self-Determination Minimum Fee Schedule in each fiscal year, if the CLS Self-Determination Minimum Fee Schedule is in effect as required herein, shall be the rate set forth in Table 1 (the "Base Rates") adjusted by the cumulative percentage change in the nationwide Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W) for the period beginning March 31, 2024 and ending on the March 31 preceding the start of the fiscal year in question (that is, the rates for SFY 2027 shall be the Base Rates adjusted by the percentage change in the CPI-W from March 31, 2024 to March 31, 2026), *provided, however*, that the rates in the CLS Self-

28

Determination Minimum Fee Schedule in any fiscal year, shall not be less than the Base Rates set forth in Table 1. For example:

- If the CPI-W increases by 3 percent from March 31, 2024 to March 31, 2025, the rates applicable for SFY 2026 shall be the Base Rates increased by 3 percent.

- If the CPI-W decreases by 3 percent from March 31, 2024 to March 31, 2025, the rates applicable for SFY 2026 shall be the Base Rates without any adjustment.

- If the CPI-W increases by 5 percent from March 31, 2024 to March 31, 2026, the rates applicable for SFY 2027 shall be the Base Rates increased by 5 percent.

11) ***Providing Non-Binding Guidance***

    a)   DHHS shall provide to PIHPs and CMHSPs non-binding guidance containing examples illustrating the operation of the contract and Policy amendments effected hereby that DHHS, in its sole discretion, deems appropriate.

29

    b)   If Attachment C takes effect, then no later than 90 days after it does so, DHHS shall provide to PIHPs and CMH-SPs non-binding guidance containing examples illustrating the operation of Attachment C that DHHS, in its sole discretion, deems appropriate.

    c)   DHHS shall consult with counsel for Plaintiffs concerning such non-binding guidance, but the form and content thereof remain in DHHS's sole discretion.

## D.   Contingencies

    1)   DHHS is required to implement the Minimum Fee Schedule Provisions only if each of the contingencies in Sections D(1)(a) through D(1)(e) below has been met:

    a)   The Michigan legislature appropriates sufficient funds to pay for capitation rate increases to implement the CLS and OHSS Self-Determination Minimum Fee Schedules for HSW SD CLS and HSW SD OHSS, respectively, for all PIHPs statewide. For the avoidance of doubt, this Settlement Agreement only requires DHHS to implement the CLS and OHSS Self-Determination Minimum Fee

30

Schedules for CMHPSM, if the contingencies in Section D(1) are satisfied, because the Plaintiffs in this Action are served only by CMHPSM and not by any other PIHPs. But DHHS has determined it will not implement the CLS and OHSS Self-Determination Minimum Fee Schedules for CMHPSM unless DHHS is able to implement them consistently statewide. Accordingly, the Minimum Fee Schedule Provisions of this Settlement Agreement are contingent on DHHS securing necessary funding and approvals for statewide implementation.

b) CMHPSM executes a contract amendment agreeing to the Minimum Fee Schedule Provisions.

c) CMS approves the contract amendment and capitation rate increases to account for the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

d) CMS approves any amendments to Michigan's Section 1115 demonstration waivers and Michigan's Section 1915(c) Habilitation Supports Waiver that CMS deems

31

necessary to implement the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

e)    CMS issues any other approvals that CMS deems necessary for implementation of the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide, including directed payment approval (*see* 42 C.F.R. § 438.6(c)), if CMS determines that any such approvals are necessary to implement the CLS and OHSS Self-Determination Minimum Fee Schedules for all PIHPs statewide.

2)    DHHS's requirements to amend its contract with CMHPSM with respect to the non-Minimum Fee Schedule Provisions of this Settlement Agreement are contingent on CMHPSM signing a contract amendment(s) containing the relevant provisions and CMS approving the contract amendment(s).

3)    DHHS shall request from the Michigan legislature that an appropriation to fund the CLS and OHSS Self-Determination Minimum Fee Schedules be included in the ongoing and base

32

part of DHHS's budget, rather than included as a one-time appropriation.

4)     DHHS will provide Plaintiffs an opportunity to comment on DHHS's draft applications to CMS for approval of any applicable state plan amendments, waiver amendments, or state-directed payments required to implement this Settlement Agreement, and DHHS will consider Plaintiffs' comments.

## E.     Effective Dates; Failure of CLS and OHSS Self-Determination Minimum Fee Schedules to Take Effect; Sunset; Consequences of Failure to Take Effect or Sunset

1)     All provisions of this Settlement Agreement except the Minimum Fee Schedule Provisions shall become effective 30 days after the Court approves this Settlement Agreement, and all provisions of this Settlement Agreement shall remain in effect thereafter until the Sunset Date described in Section E(6) below, at which point all provisions of this Settlement Agreement shall no longer be enforceable and the obligations herein shall cease to exist, except for the provisions of Section G.

a)     It is understood that some of the Terms in this Settlement Agreement (for example, contract amendments and

33

Medicaid Provider Manual modifications) will take DHHS more than 30 days to complete after Court approval. Accordingly, DHHS will not be deemed in violation of this Settlement Agreement so long as it continues to make diligent, good faith efforts to finalize what is required to implement these Terms.

2) On the date 10 calendar days after Director Hertel or her successor certifies to Plaintiffs and the Court that all of the Contingencies in Section D(1) have been met:

   (a) the Minimum Fee Schedule Provisions of this Settlement Agreement shall become operative, and

   (b) the interim funding for Plaintiffs Derek Waskul, Kevin Wiesner, Cory Schneider, and Hannah Ernst set forth in Section A(5) above shall be terminated and shall be supplanted by such Minimum Fee Schedule Provisions.

3) Recognizing that the interim financial relief hereunder will not extend to persons other than the four named individual Plaintiffs, DHHS shall make good faith efforts to satisfy the Contingencies set forth in Section D(1) as promptly as

34

reasonably practicable given the nature of the Contingencies. If any such Contingencies set forth in Section D(1) have not been met within eighteen (18) months of the date of execution of this Settlement Agreement (the "Drop Dead Date"), and there has not by that time been express written consent of all Parties to an extension of the Drop Dead Date, then the Minimum Fee Schedule Provisions of this Settlement Agreement shall not come into effect. Notwithstanding this Section E(3), if the only uncompleted Contingencies as of the Drop Dead Date are PIHP contract amendments, CMS approvals thereof, and/or CMS approvals of the new capitated rates, then the Drop Dead Date shall be deemed extended by six months as to those uncompleted amendments and approvals only.

4)   If the Minimum Fee Schedule Provisions of this Settlement Agreement have not come into effect by the date that is 30 days before the Drop Dead Date, DHHS shall at that time begin, and shall complete by 120 days after the Drop Dead Date or, if applicable, the extended Drop Dead Date, the process for making amendments to the Medicaid Provider

35

Manual that are necessary to reflect the contents of Attachment C.

5)    Sixty (60) days after the Drop Dead Date, or, if applicable, the extended Drop Dead Date, the obligation of DHHS to make the payments to or on behalf of the individual Plaintiffs as described in Section A(5) above shall expire.

6)    On September 30, 2029 ("Sunset Date"), all provisions of this Settlement Agreement shall expire, except for Section G.

   a)    In anticipation of such expiration, DHHS shall begin no later than April 1, 2029, and shall complete before June 30, 2029, the process for making amendments to the Medicaid Provider Manual to reflect the content of Attachment C.

   b)    Any motion to enforce DHHS's obligation to promulgate the amendments described in the foregoing Section E(6)(a) shall not be subject to the informal consultation obligations of Section A(4) above and shall be filed before the Sunset Date. Such motion shall remain within the

36

Court's jurisdiction, including after the Sunset Date as described in Section E(6)(c)(i) below.

c)    Upon the Sunset Date, excepting only Section G below and Section E(6)(b) above, all provisions of this Settlement Agreement shall no longer be enforceable against DHHS and the obligations of DHHS herein shall cease to exist.

i)    Upon the later of the Sunset Date or, if a motion is filed pursuant to Section E(6)(b) above then 90 days after the entry of a court order that fully adjudicates such a motion, the Action may, upon motion, be dismissed as against DHHS.

ii)   Such dismissal as against DHHS shall be with prejudice as to any claims accruing prior to the Sunset Date and without prejudice as to any claims accruing thereafter.

iii)  Upon such dismissal, the Court's continuing jurisdiction over this Settlement Agreement shall cease.

iv) Neither such dismissal, nor the expiration of DHHS's obligations under this Settlement Agreement, shall by itself effect the modification or vacatur of any Policies, guidance, or other actions implemented by DHHS pursuant hereto, but such Policies, guidance, or other actions shall upon such expiration and dismissal be subject to ordinary regulatory processes of amendment, vacatur, or modification.

**F.   Attorneys' Fees and Costs**

1) Attorneys' fees and costs for Plaintiffs' counsel will be negotiated separate and apart from this Settlement Agreement.

2) If the Parties cannot agree on attorneys' fees and costs, Plaintiffs may file a motion for attorneys' fees and costs, and DHHS may oppose the motion or the amount of the fees and costs sought.

3) Plaintiffs reserve the right to move for attorneys' fees and costs for work performed after this Settlement Agreement is executed, and DHHS reserves the right to oppose such a motion or the amount of the fees and costs sought.

38

## G.   Merger of Claims into Settlement Agreement

1)   Thirty-one (31) days after the date the Court approves this Settlement Agreement (the "Merger Date"), but effective as of the date of such approval, all claims that Plaintiffs brought or could have brought against DHHS in this Action shall be extinguished as separate claims and shall merge into this Settlement Agreement.

2)   From and after the Merger Date, Plaintiffs shall have no further recourse against DHHS in respect of such merged and extinguished claims except pursuant to the terms hereof.

3)   The claims compromised, settled, and resolved by this Settlement Agreement, and merged into and extinguished by this Settlement Agreement pursuant to paragraph (1) above, include all claims that were raised in the Complaint or Amended Complaint, and all claims that could have been raised in the Complaint or Amended Complaint, on behalf of all Plaintiffs. As of the Merger Date, in consideration of the commitments contained herein, and the benefits provided or to be provided hereunder, this Settlement Agreement shall

39

fully resolve, extinguish, and finally and forever bar, and the Plaintiffs hereby give up, all claims described in this Section G.

4) The extinguishment of such claims, and/or their merger into this Settlement Agreement, shall be limited to DHHS and shall not preclude claims against any other person or entity, including without limitation WCCMH and/or CMHPSM.

5) Nothing herein shall preclude a Plaintiff from asserting in a Fair Hearing that the authorized CLS units are insufficient to meet that Plaintiff's needs.

6) Nothing herein shall prevent Plaintiffs from continuing to prosecute the Action against either or both CMHPSM or WCCMH, and nothing herein shall limit the relief Plaintiffs may seek against those Defendants.

7) Nothing herein shall preclude a Plaintiff from asserting claims against DHHS that accrue after the Sunset Date in a new lawsuit.

40

**H.   Miscellaneous**

   1)   This Settlement Agreement may not be changed or amended except by written agreement of the Parties.

   2)   By entering into and complying with this Settlement Agreement, no party makes any concession as to the merits of the case, or of the opposing Party's claims or defenses.

   3)   This Settlement Agreement is a compromise of disputed claims and is not to be construed as an admission of liability on the part of DHHS.

Agreed to on this 1st day of December, 2023.

**[Signatures follow]**

/s/ _Stephanie M Service_
Stephanie M. Service (P73305)
Kathleen A. Halloran (P76453)
Bryan W. Beach (P69681)
*Attorneys for the Michigan Department of Health and Human Services and Elizabeth Hertel, in her official capacity*
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
ServiceS3@michigan.gov
HalloranK1@michigan.gov
BeachB@michigan.gov


/s/ _Meghan E Groen_
Meghan Hodge-Groen
Senior Deputy Director,
Behavioral and Physical Health and Aging Services Administration
Michigan Department of Health and Human Services
333 South Grand Avenue
P.O. Box 30195
Lansing, MI 48909

/s/ _____
Edward P. Krugman
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
*Attorneys for Plaintiffs*
50 Broadway, Suite 1500
New York, NY 10004-3821
(646) 680-8912
krugman@nclej.org


/s/_____
Nicholas A. Gable (P79069)
Kyle Williams (P77227)
DISABILITY RIGHTS MICHIGAN
*Attorneys for Plaintiffs*
4095 Legacy Pkwy
Lansing, MI 48911-4264
(517) 487-1755
ngable@drmich.org
kwilliams@drmich.org

/s/ _Stephanie M. Service_
Stephanie M. Service (P73305)
Kathleen A. Halloran (P76453)
Bryan W. Beach (P69681)
*Attorneys for the Michigan Department of Health and Human Services and Elizabeth Hertel, in her official capacity*
Michigan Department of Attorney General
Health, Education & Family Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
ServiceS3@michigan.gov
HalloranK1@michigan.gov
BeachB@michigan.gov


/s/ _Meghan Hodge-Groen_
Meghan Hodge-Groen
Senior Deputy Director,
Behavioral and Physical Health and Aging Services Administration
Michigan Department of Health and Human Services
333 South Grand Avenue
P.O. Box 30195
Lansing, MI 48909

/s/ _Edward P. Krugman_
Edward P. Krugman
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
*Attorneys for Plaintiffs*
50 Broadway, Suite 1500
New York, NY 10004-3821
(646) 680-8912
krugman@nclej.org


/s/ _Nicholas Gable_
Nicholas A. Gable (P79069)
Kyle Williams (P77227)
DISABILITY RIGHTS MICHIGAN
*Attorneys for Plaintiffs*
4095 Legacy Pkwy
Lansing, MI 48911-4264
(517) 487-1755
ngable@drmich.org
kwilliams@drmich.org

42

/s/ *Stephanie M. Service*
Stephanie M. Service (P73305)
Kathleen A. Halloran (P76453)
Bryan W. Beach (P69681)
*Attorneys for the Michigan Depart-
ment of Health and Human Ser-
vices and Elizabeth Hertel, in her
official capacity*
Michigan Department of Attorney
General
Health, Education & Family Ser-
vices Division
P.O. Box 30758
Lansing, MI 48909
(517) 335-7603
ServiceS3@michigan.gov
HalloranK1@michigan.gov
BeachB@michigan.gov


/s/ *Meghan E Groen*
Meghan Hodge-Groen
Senior Deputy Director,
Behavioral and Physical Health
and Aging Services Administra-
tion
Michigan Department of Health
and Human Services
333 South Grand Avenue
P.O. Box 30195
Lansing, MI 48909

/s/ *Edward P. Krugman*
Edward P. Krugman
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
*Attorneys for Plaintiffs*
50 Broadway, Suite 1500
New York, NY 10004-3821
(646) 680-8912
krugman@nclej.org


/s/ *Nicholas Gable*
Nicholas A. Gable (P79069)
Kyle Williams (P77227)
DISABILITY RIGHTS
MICHIGAN
*Attorneys for Plaintiffs*
4095 Legacy Pkwy
Lansing, MI 48911-4264
(517) 487-1755
ngable@drmich.org
kwilliams@drmich.org

42

**ATTACHMENT A:**
**COMMUNITY LIVING SUPPORTS CODE H2015**

Community Living Supports (CLS) are defined as services that "facilitate an individual's independence, productivity, and promote community inclusion and participation," including:

- Assisting, reminding, observing, guiding or training the participant with: meal preparation; laundry; routine, seasonal, and heavy household care and maintenance; Activities of Daily Living (ADLs), such as bathing, eating, dressing, personal hygiene; and shopping for food and other necessities of daily living.

- Assisting, supporting, and/or training the participant with: money management; non-medical care (not requiring nurse or physician intervention); socialization and relationship building; transportation (excluding to and from medical appointments that are the responsibility of Medicaid through MDHHS or health plan) from the participant's residence to community activities, among community activities, and from community activities back to the participant's residence; leisure choice and participation in regular community activities; attendance at medical appointments; and acquiring goods and services other than those listed under shopping.

- Reminding, observing, and/or monitoring of medication administration.

*See* Habilitation Supports Waiver.

Whether a service may be covered as CLS depends on whether it is described in the above definition and is determined through the person-centered planning process to "facilitate an individual's independence, productivity, and promote community inclusion and participation," for the particular individual. This basic coverage criteria are fleshed out in the "medical necessity criteria" (see Attachment B), which include services and supports:

- Necessary for screening and assessing the presence of a mental illness, developmental disability or substance use disorder; and/or

- Required to identify and evaluate a mental illness, developmental disability or substance use disorder; and/or

- Intended to treat, ameliorate, diminish or stabilize the symptoms of mental illness, developmental disability or substance use disorder; and/or

- Expected to arrest or delay the progression of a mental illness, developmental disability, or substance use disorder; and/or

- Designed to assist the beneficiary to attain or maintain a sufficient level of functioning in order to achieve his goals of community inclusion and participation, independence, recovery, or productivity.

Costs that may be covered for self-determination CLS (and thus are reimbursed through the CLS unit rate) include, but are not limited to, the following, *if* they are: (1) not already covered by another Medicaid service provided to the participant, (2) medically necessary for a particular CLS participant, as set forth in Attachment B, and (3) related to the participant's IPOS goals of facilitating independence and productivity or of promoting community inclusion and participation:

1

- CLS staff compensation (wages, benefits, payroll taxes) for time spent on any activities covered by CLS, including CLS staff time spent on delivering CLS services in the participant's residence, required training, planning meetings, supervision, travel with the participant, and attendance at community activities with the participant.

- Transportation (*i.e.*, mileage) to and from community activities (*not* to and from medical appointments, so long as the transportation costs for those appointments are covered by the State Plan).

- Fees and other charges for a community activity for a CLS participant and for the CLS worker to accompany the participant in the community activity, including, for example, gym fee, movie ticket, theme park admission, meal at a restaurant, fee for bowling, fee for horseback riding.

- Membership fees for organizations that support the identified CLS objectives.

Costs for the following are not covered as CLS under any circumstances:

- Room and board

- Fiscal intermediary services

- Purchase or rental of a vehicle

- In-home entertainment subscription

- Any payments to spouses or parents of minor children or to a legal guardian. Note, however, that payments to a non-guardian parent of an adult, or to a spouse of a legal guardian, *are* permitted so long as they are for work actually performed by that individual.

**ATTACHMENT B**
**MEDICAL NECESSITY CRITERIA**

This Attachment B is intended to resolve areas where disputes have arisen.

The specific definition of medical necessity and the criteria for determining it are set forth in the current version (in effect on December 1, 2023) of Section 2.5 of the Behavioral Health and Intellectual and Developmental Disability Supports and Services chapter of the Medicaid Provider Manual and include supports, services, and treatments that are:

- Necessary for screening and assessing the presence of a mental illness, developmental disability, or substance use disorder; and/or

- Required to identify and evaluate a mental illness, developmental disability, or substance use disorder; and/or

- Intended to treat, ameliorate, diminish, or stabilize the symptoms of mental illness, developmental disability, or substance use disorder; and/or

- Expected to arrest or delay the progression of a mental illness, developmental disability, or substance use disorder; and/or

- Designed to assist the beneficiary to attain or maintain a sufficient level of functioning in order to achieve his goals of community inclusion and participation, independence, recovery, or productivity.

Medical necessity determinations are made in the person-centered planning process by a combination of assessments by professional(s), with input from the individual and their support system. Medical necessity determinations are made in terms of amount, scope, and duration. The determination of whether a given activity is medically necessary, and whether an alternative would accomplish the same goals, is inherently and always must be a determination specific to the individual.

If a particular activity, put in the IPOS through the person-centered planning process, meets the above definition of medical necessity and the definition of CLS in Attachment A, then it is part of the "scope" of the CLS services. UM will not replace the person-centered planning process. For example, UM review may not remove or change the participant's goals. It may provide for less costly alternatives that accomplish the same goals.

This does not prohibit a supervisor from changing a goal that the case manager agreed to at the person-centered planning meeting, provided the person-centered planning meeting is re-opened.

1

**ATTACHMENT C**

**PERSON-CENTERED PLANNING, COSTING OUT, AND PREPARING THE IPOS AND THE BUDGET RELATED TO COMMUNITY LIVING SUPPORTS**

### Costing Out Procedures

(1)   In accordance with Appendix E of the HSW, both the IPOS and the individual budget are developed in conjunction with one another through the person-centered planning process.

 (a)   The Home and Community Based Services Rule (42 C.F.R. Part 441, Subpart G), Appendix D-1 of the HSW, Michigan Mental Health Code, and Michigan Medicaid Provider Manual provisions implementing Appendix D-1 of the HSW, govern the person-centered-planning process.

 (b)   Both the participant and the PIHP/CMHSP must agree, during the person-centered planning process, to the amounts in the individual budget before the budget is authorized for the participant's use.

 (c)   If the person-centered planning process does not result in an agreed budget, the PIHP/CMHSP shall set the budget and, pending resolution through any internal appeal and Fair Hearing that the participant may pursue, the budget shall be set equal to the immediately preceding budget.

(2)   The IPOS must set forth, in detail and with specificity, the amount, scope, and duration (see Attachments A and B) of the recipient's CLS services. The activities and tasks constituting the "scope" of the services, for example, should be set forth in enough detail for their anticipated individual and cumulative costs to be ascertained.

(3)   The amount of the recipient's CLS budget is determined by costing out the medically necessary services and supports set forth in the IPOS. Specifically:

 (a)   The staff wage component of the budget shall:

  (i)   Consist of staff wages in an amount sufficient to provide the medically necessary services identified in the beneficiary's IPOS but that shall not exceed the staff wage necessary to do so, multiplied by the number of authorized units that staff member is expected to fill; and

  (ii)   Include Worker's Compensation, Unemployment Insurance, and taxes.

 (b)   Considerations for determining an appropriate staff wage may include, but are not limited to, CLS staff wages charged by self-determination providers in the community for similarly-situated CLS recipients; staff wages for the CLS recipient's self-determination providers for other services; staff wages the CLS recipient has previously paid to CLS self-determination staff; staff wages requested by CLS self-determination staff the CLS recipient wishes to hire; staff wages requested by CLS self-determination staff that have responded to job advertisements posted by the CLS recipient; and the CLS recipient's efforts to locate staff at any given staff wage.

(c)     The anticipated costs of the activities and tasks determined to be part of the CLS services' "scope" (as set forth in Attachments A and B) shall be costed out separately.

(d)     The recipient's anticipated transportation costs related to the CLS activities and tasks in the IPOS are likewise costed out separately, it being understood that staff transportation cost does not include home-to-workplace or workplace-to-home transportation time or expense for the staff member.

(4)     The CLS budget must be sufficient to implement the IPOS.